IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SUSAN J., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO.  2:00-cv-918-F |
| ) | |
| BOB RILEY, in his official capacity as ) | |
| Governor of the State of Alabama, *et al.* ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS**

Bob Riley, in his official capacity as Governor of the State of Alabama, John Houston, in his official capacity as Commissioner of the Alabama Department of Mental Health and Mental Retardation, and the Alabama Department of Mental Health and Mental Retardation, defendants in this action (collectively, the "State Defendants" unless otherwise stated), submit this Memorandum in support of their Motion for Judgment on the Pleadings.  For the reasons stated in their Motion and this Memorandum, this Court should enter judgment in favor of the State Defendants and against the Plaintiffs.

**INTRODUCTION**

This case involves Alabama's program for providing services to those mentally retarded individuals eligible for both treatment in an intermediate care facility and for Medicaid benefits.  Those services are provided under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v, and represent an exercise of Congress' powers under the Spending Clause of the United States Constitution, Art. I, § 8, cl. 1.

More specifically, in 42 U.S.C. § 1396, Congress provided the following

foundation for Title XIX:

> For the purpose of enabling each state, as far as practicable under the conditions of each state, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families or individuals attain or retain capability for independence or self-care, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this subchapter. The sums made available under this section shall be used for making payments to states which have submitted, and had approved by the Secretary, state plans for medical assistance.

42 U.S.C. § 1396. The result is a "cooperative venture" of the State and the federal government. *Silver v. Baggiano*, 804 F. 2d 1211, 1215. The State need not participate, but, if it chooses to do so, it submits a plan that details how it proposes to comply with its obligations. The plan must contain certain provisions, but the States have some latitude as well. "Within broad federal rules, each State decides eligible groups, types and range of services, payment levels for services, and administrative and operating procedures." 42 C.F.R. § 430.0. If the plan is acceptable, the federal government subsidizes the State's compliance by funding a share of the cost.

This case involves claims that the State is not complying with provisions in its plan. In their complaint, as twice amended, 31 Plaintiffs allege that the State Defendants have violated rights secured by the United States Constitution and federal statutory by failing to provide the required active treatment or habilitation of eligible individuals through, among other things, residential placement, day habilitation, or both. They contend that a number of eligible individuals are on a waiting list and more are underserved. More specifically, Plaintiffs make the following claims:

(1) The State Defendants have not provided required services to eligible

recipients with reasonable promptness in violation of 42 U.S.C. § 1396a(a)(8), 42 C.F.R. § 435.930(a), and the Fourteenth Amendment to the United States Constitution. (No. 46 at 33-34). The Plaintiffs rely on 42 U.S.C. § 1983 to vindicate these rights. (*Id.*)

(2)  The State Defendants have not provided eligible recipients with the same level of mandatory and designated optional services that are made available to other categorically needy recipients in violation of 42 U.S.C. § 1396a(a)(10)(B), 42 C.F.R. § 440.240, and the Fourteenth Amendment to the United States Constitution. (No. 46, at 34-35). Again, the Plaintiffs rely on § 1983 to vindicate these rights. (*Id.*)

(3)  The State Defendants have failed to provide certain plaintiffs with the right to apply for services in violation of 42 U.S.C. § 1396(a)(8), the implementing regulations, and the Fourteenth Amendment to The United States Constitution. (No. 46, at 35-36) Again, the Plaintiffs rely on 42 U.S.C. § 1983 to vindicate these rights. (*Id.*)

(3)  The State Defendants have violated the Plaintiffs' right to due process by failing to provide Plaintiffs with adequate residential treatment and day habilitation. The Plaintiffs ground this right in the Fourteenth Amendment to the United State Constitution and seek to vindicate it through 42 U.S.C. § 1983. (No. 46, at 36-38).

**2.   The Standard of Review.**

The State Defendants make their motion pursuant to Federal Rule of Civil Procedure 12(c). With respect to such a motion for judgment on the pleadings, the Eleventh Circuit has held that the courts should:

> Accept[] the facts in the complaint as true and view[] them in the light most favorable to the nonmoving party. *See Ortega v. Christian,* 85 F. 3d 1521, 1524-25 (11th Cir. 1996). "Judgment on the pleadings is appropriate only when the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Moore v. Liberty Nat'l Life Ins. Co.,* 267 F. 3d 1209, 1213 (11th Cir. 2001) (internal marks omitted), *cert. denied,* 535 U.S. 1018, 122 S. Ct. 1608, 152 L. Ed 2d 622 (2002).

*Horsley v. Feldt,* 304 F. 3d 1125, 1131 (11th Cir. 2002); *see also Cannon v. City of West Palm Beach,* 250 F. 3d 1299, 1301 (11th Cir. 2001) ("Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law.") In considering the pleadings, this Court should not give deference to any conclusory allegations, *South Florida Water Management Dist. v. Montalvo,* 84 F. 3d 402, 409 fn. 10 (11th Cir. 1996), or to any unsupported conclusions of law or mixed assertions of law and fact. *See Gonzales v. Reno*, 325 F. 3d 1228, 1235 (11th Cir. 2003).

Notwithstanding the focus on the pleadings, however, this Court is not barred from considering matters of public record. In *Bryant v. Avado Brands, Inc.,* 187 F. 3d 1271, 1275-81 (11th Cir. 1999), the Eleventh Circuit held that consideration of documents that had been publicly filed with the Securities Exchange Commission in a securities action at the motion to dismiss stage was not inappropriate. Those documents were capable of judicial notice and were pertinent to two of the defenses asserted in the motion. The court explained that, while the purpose of prohibiting courts from considering matters outside the pleadings at the motion to dismiss stage was to keep a plaintiff from being caught by surprise, consideration of publicly filed documents is "consonant with common notions of fairness." 187 F. 3d at 1279. It is also consistent with considerations of judicial economy.

4

In this case, consideration of public documents relating to the State's plan and the waiver in connection with this Motion is not inappropriate. Those documents define the terms of the State's agreement with the Federal Government, and those terms speak to the potential scope of the State's obligations to the Plaintiffs. In any event, as public documents, they are capable of judicial notice. Finally, considering these materials will preclude the Plaintiffs from asserting facts outside their context.

## Title XIX

As noted above, Title XIX of the Social Security Act is designed to enable States to furnish medical assistance and rehabilitation services to eligible persons. 42 U.S.C. § 1396. The States that wish to participate formulate a plan for providing services and submit it to the federal government for review. Section 1396a of Title 42 specifies the content of an acceptable plan and includes the requirement that the plan:

* * *

> (3)  provide for opportunity for granting a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness;

* * *

> (8)  provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals . . . .

42 U.S.C. § 1396a(a)(3), (8). Section 1396a(a)(10) requires the plan to provide for medical assistance to certain individuals and to other optional individuals, 42 U.S.C. § 1396a(a)(10)(A), and further states that the plan must provide:

> (B)  that the medical assistance made available to any individual described in subparagraph (A) –

>   (i)   shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual, and
>
>   (ii)  shall not be less in amount, duration, or scope than the medical assistance made available to individuals not described in subparagraph (A).

42 U.S.C. § 1396a(a)(10)(B). The Secretary "shall approve" any plan that meets the requirements of § 1396a(a). 42 U.S.C. § 1396a(b).

As with other Spending Clause statutes, Title XIX includes an agency enforcement mechanism. Section 1396c empowers the federal agency to withhold or limit payments to a State that has failed to "comply substantially" with the provisions of § 1396a in its administration of the plan. Section 1396c provides that there will not be any such action absent a finding of substantial noncompliance by the Secretary "after reasonable notice and opportunity to the State agency administering or supervising the administration of the State plan approved . . . ." *Id.* Agency regulations provide greater detail on the process. In particular, 42 C.F.R. § 430.45 states that withholding will take place "only" on an Administrator's finding of a failure to comply substantially, and that "[h]earings . . . are generally not called until a reasonable effort has been made to resolve the issues through conferences and discussions. These may be continued even if a date and place have been set for the hearing." *Id.* Moreover, a State that is dissatisfied with the Administrator's decision that it has failed to comply substantially with its plan obligations has the right to judicial review. 42 C.F.R. § 430.38.

Furthermore, Title XIX allows the Administrator to agree to waive certain statutory provisions. 42 U.S.C. § 1396n. In particular, waivers respecting the inclusion of home and community-based services that limit the number of people who will receive those services are permitted. 42 U.S.C. § 1396n(c). In particular, the statute provides:

6

> (9)  In the case of any waiver under this subsection which contains a limit on the number of individuals who shall receive home or community-based services, the State may substitute additional individuals to receive such services to replace any individuals who die or become ineligible for services under the State plan.
>
> (10)  The Secretary shall not limit to fewer than 200 the number of individuals in the State who may receive home and community-based services under a waiver under this subsection.

42 U.S.C. § 1396n(c)(9), (10).  Moreover, such a waiver may include a waiver of the comparability requirements in § 1396a(a)(10)(B).  *See* 42 U.S.C. § 1396n(c)(3).

Consistent with § 1396n, the Health Care Financing Administration of the Department of Health and Human Services has granted the State of Alabama Home and Community Based Waivers and a Living at Home Waiver.  *See* Exhibits A, B, and C.  Those waivers extend to include the comparability requirements of § 1396a(a)(10)(B) and cap the number of unduplicated recipients.

## ARGUMENT

### A.  The Legal Background

In this portion of their Memorandum, the State Defendants will show that, in order to proceed, the Plaintiffs must show that Congress intended to create privately enforceable rights when it enacted the Medicaid statutes.  To the extent that *Doe v. Chiles*, 136 F. 3d 709 (11 Cir. 1998), says otherwise, that decision is due to be revisited in the light of subsequent changes of law.  The State Defendants will also show that federal regulations will not support the creation of privately enforceable rights.

#### 1.  Identifying Privately Enforceable Rights

As noted above, the Medicaid Act is an exercise of Congress' powers under the Spending Clause.  U.S. CONST., Art I, § 8, cl. 1.  In *Barnes v. Gorman,* the United States

7

Supreme Court pointed out, "We have repeatedly characterized . . . Spending Clause legislation as 'much in the nature of a *contract*:  in return for federal funds, the [recipients] agree to comply with federally imposed conditions.'"  536 U.S. 181, 186, 122 S. Ct. 2097, 2100-01 (2002) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17, 101 S. Ct. 1531, 1540 (1981), and adding emphasis).  In *Pennhurst*, more than twenty years ago, the Court explained that, for Spending Clause legislation, "the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance, but rather action by the Federal Government to terminate funds to the State." 451 U.S. at 28, 101 S. Ct. at 1545.

In framing their Complaint, Plaintiffs seek to vindicate statutory, regulatory, and constitutional rights through 42 U.S.C. § 1983.  By doing so, they do not appear to suggest that any of the statutes or regulations on which they rely creates a private right of action either directly or by implication.  Moreover, their invocation of § 1983 does not, standing alone, empower Plaintiffs to proceed.  Rather, "to seek redress through § 1983, . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone,* 520 U.S. 329, 340, 117 S. Ct. 1353, 1359 (1997) (emphasis in original); *see also Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 106, 110 S. Ct. 444, 448 (1989) ("Section 1983 speaks in terms of 'rights, privileges, or immunities,' not violations of federal law.")  Indeed, nothing "short of an unambiguously conferred" statutory right will support a cause of action brought under § 1983.  *Gonzaga Univ. v. Doe,* 536 U.S. 273, 283, 122 S. Ct. 2268, 2275 (2002).  The Court explains, "Section 1983 provides a remedy only for the deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States.  Accordingly, it is

*rights,* not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of that section." *Id.* (emphasis in original).

Federal funding statutes, like the Medicaid statute, do not provide a basis for private enforcement through § 1983 "unless Congress 'speak[s] with a clear voice,' and manifests an 'unambiguous' intent to confer individual rights." *Barnes v. Gorman,* 536 U.S. at 280, 122 S. Ct. at 2273 (quoting *Pennhurst,* 451 U.S. at 17, 28 and n. 21, 101 S. Ct. at 1531, 1540, 1545 and n. 21). The Court has noted, "Since *Pennhurst*, only twice have we found spending legislation to give rise to enforceable rights." *Gonzaga v. Doe*, 536 U.S. at 280-81, 122 S. Ct. at 2273-74. In those two instances, the applicable statute "unambiguously" or "explicitly" conferred a specific monetary benefit or entitlement on the claimants. *Id.* (discussing *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 107 S. Ct. 766 (1987), and *Wilder v. Virginia Housing Authority,* 496 U.S. 498, 110 S. Ct. 2510 (1990), respectively). More recently, though, the Court has found no basis for privately enforceable rights. *See Gonzaga,* 536 U.S. at 281, 122 S. Ct. at 2274 (discussing *Suter v. Artist M.*, 503 U.S. 347, 112 S. Ct. 1360 (1992), and *Blessing v. Freestone).*

In *Gonzaga*, as noted above, the Court "reject[ed] the notice that our cases permit anything short of unambiguously conferred right to support a cause of action brought under § 1983." 536 U.S. at 283, 122 S. Ct. at 2275. Linking its implied right of action jurisprudence to its § 1983 cases, the Court pointed to the common denominator, which is "*whether Congress intended to create a federal right*." *Id.* (emphasis in original). "Accordingly, where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit,

9

whether under § 1983 or under an implied right of action." 536 U.S. at 286, 122 S. Ct. at 2277. The Court concluded that the nondisclosure provisions of the Family Educational Rights and Privacy Act did not confer privately enforceable rights because those provisions lacked rights-creating language, spoke in terms of institutional policy and practice, had an aggregate focus, and were enforceable by the Secretary of Education. 536 U.S. at 287-90, 122 S. Ct. at 2277-79.

In *31 Foster Children v. Bush*, 329 F. 3d 1255 (11th Cir. 2003), the Eleventh Circuit Court of Appeals concluded that portions of the Adoption Assistance and Child Welfare Act do not create privately enforceable rights. In reaching that conclusion, the Eleventh Circuit drew from *Gonzaga* the "lesson" that privately enforceable rights are to be found in the text and structure of the statute, explaining:

> If the text and structure provide no indication that Congress intends to create new individual rights, there is no basis for a private suit. If they provide some indication that Congress may have intended to create individual rights, and some indication it may not have, that means that Congress has not spoken with the requisite clear voice. Ambiguity precludes enforceable rights.

329 F. 3d at 1270 (internal quotations and citations omitted). The intent of Congress is the linchpin, and it is determined by looking for the presence of individually focused rights creating language, an individual rather than a system wide or aggregate focus, and the availability of an enforcement mechanism for individual claims. *Id.*

Even more recently, in *Arrington v. Helms,* __ F. 3d __, 2006 WL 321955 (11th Cir. Feb. 13, 2006), the Eleventh Circuit Court of Appeals held that portions of Title IV-D of the Social Security Act that relate to the collection, distribution, and disbursement of child support payments did not create individual rights enforceable through § 1983. In particular, the court affirmed a judgment holding that 42 U.S.C. § 657 does not create

10

rights enforceable through § 1983.

### 2. Federal regulations do not create individual rights enforceable through § 1983.

In *Harris v. James*, 127 F. 3d 993 (11th Cir. 1997), the Eleventh Circuit held that a Medicaid regulation requiring that the State's plan ensure that recipients of medical treatment received transportation to and from medical service providers could not be enforced through § 1983. Drawing on the Supreme Court's decisions through *Blessing v. Freestone*, the court noted that "the driving force" is "Congressional intent to create a particular federal right." 127 F. 3d at 1008. While agency regulations that "merely further[] or flesh[] out" a statutory right might contribute to the definition of that right, and, thereby, be enforceable, *id.* at 1009, regulations that "define[] the content of a statutory provision that creates no federal right" and those that "go[] beyond explicating the statutory provision and impose[] distinct obligations in order to further the broad objectives underlying the statut[e]" are not enforceable through § 1983. *Id.* The court explained:

> To hold otherwise would be inconsistent with the driving force of the Supreme Court precedent requiring a *Congressional* intent to create federal rights and with the Supreme Court's directive that courts must find that Congress has *unambiguously* conferred federal rights on the plaintiff.

*Id.* (emphasis in original) (citing *Suter; Pennhurst*). In the end, the relationship between the transportation regulation and Congressional intent was "too tenuous" to support the creation of an enforceable right. *Id*. at 1010.

Subsequently, in *Alexander v. Sandoval*, 532 U.S. 275, 121 S. Ct. 1511 (2001), the United States Supreme Court held that a private right of action was not available to private individuals who sought to enforce agency disparate impact regulations

11

promulgated pursuant to Section 602 of the Civil Rights Act of 1964 against a federal grantee. The Court explained, "Language in a regulation may invoke a private right of action that congress has created, but it may not create a right that Congress has not." 532 U.S. at 290, 121 S. Ct. at 1522. Put differently, if the text and structure of a federal Spending Clause statute do not create privately enforceable rights, agency regulations cannot do so. And, in *South Camden Citizens in Action v. New Jersey Dept. of Environmental Protection,* 274 F. 3d 771 (3d Cir. 2001), the Third Circuit held that the agency disparate impact regulations that were held not to be privately enforceable standing alone in *Sandoval* were not privately enforceable through § 1983.

**3. Plaintiffs cannot enforce the provisions of a contract to which they are not a party.**

As noted above, the relationship that Title XIX establishes between the State and the federal government is "much in the nature of a contract." *See Pennhurst,* 451 U.S. at 17, 101 S. Ct. at 1540. The Plaintiffs are not parties to this arrangement.

In *Blessing v. Freestone*, Justice Scalia, joined by Justice Kennedy, concurred but reserved the question whether "§ 1983 *ever* authorizes the beneficiaries of a federal-state funding and spending agreement – such as Title IV-D – to bring suit." 520 U.S. at 349, 117 S. Ct. at 1364 (Scalia, J., concurring) (emphasis in original). Those Justices observed that individuals like the Plaintiffs in this case are third-party beneficiaries of a contract, and '[u]ntil relatively recent times, the third-party beneficiary was generally regarded as a stranger to the contract, and could not sue upon it . . . ." *Id.* Given that third-party beneficiaries had no right to enforce contract provisions when § 1983 was enacted, the rights secured by § 1983 do not include rights claimed by third-party beneficiaries. This

12

Court should reject Plaintiffs' claims for that reason.

Even under the modern view, a third-party beneficiary cannot enforce contractual rights unless he or she is an intended, as opposed to an incidental, beneficiary. In *Wehunt v. Ledbetter*, 875 F. 2d 1558 (11th Cir. 1989), the Eleventh Circuit held that the intended beneficiary of Title IV-D of the Social Security Act, which provides for the collection and distribution of child support payments, was the taxpaying public, not the recipients of the funds. The Third and Sixth Circuits have, however, held that the recipients of Title XIX services are the intended beneficiaries of §§ 1396a(a)(8), (10), and 15. *See Sabree v. Richman,* 367 F. 3d 180, 189 (3rd Cir. 2004); *Westside Mothers v. Haveman*, 289 F. 3d 852, 863 (6th Cir. 2002). The State Defendants disagree with those conclusions.

Intended beneficiary or no, however, the third-party beneficiary can only enforce the terms of the contract. They cannot change those terms to provide additional benefits not contemplated by the parties to the underlying transaction. In particular, to the extent that the State's waivers include a waiver of the comparability requirement and a cap on the number of recipients, *see* Exhibits A, B, and C, these Plaintiffs cannot reimpose comparability, demand that the cap be increased, or both.

**B.   The statutes on which the Plaintiffs rely do not create individual rights enforceable through § 1983.**

Evaluating the Plaintiffs' claims against the legal background set forth above requires the examination of the text of each statutory provision. *Cf. Blessing v. Freestone,* 520 U.S. at 344, 117 S. Ct. at 1361 (9th Circuit erred in "taking a blanket approach to determining whether Title IV-D creates rights.") In particular, this Court should first attempt to determine whether Congress intended the statute to benefit the

plaintiffs. That determination involves considering whether the provision: (1) contains individually focused, rights creating language; (2) has an individual focus, not one that is aggregate or system wide; and (3) has an enforcement mechanism available to aggrieved individuals. *See Arrington*, 2006 WL 321955 at 6.

Before doing so, the State Defendants note that, in *Doe v. Chiles*, 136 F. 3d 709 (11th Cir. 1998), the Eleventh Circuit affirmed a district court judgment that enjoined Florida officials from failing to provide developmentally disabled plaintiffs with assistance within a reasonable time period. That decision predates *Gonzaga*, so its conclusion that § 1396a(a)(8) creates individually enforceable rights is due to be revisited in the light of *Gonzaga*. In the State Defendants' view, examining the text and structure of Title XIX in the light of *Gonzaga* leads to the conclusion that no individual rights enforceable through § 1983 were created.

Sections 1396a(a)(3), (8), and (10) talk about "individuals" but that is not dispositive of Congressional intent. Section 1396a(a)(10)(A) shows that, between the "all individuals" identified in subsection (i) and the optional group or groups of individuals in subsection (ii), many individuals are involved. Moreover, each individual needs something different as the Second Amended Complaint shows. In *Arrington,* the Eleventh Circuit relying on *31 Foster Children*, held that references to the individual foster "child" and "family" in 42 U.S.C. § 657 gave that statute an aggregate or system-wide focus. *Arrington*, 2006 WL 321955, at 7.

Likewise, the services to be provided indicate an aggregate or system wide focus because they are described in generic terms. *See* 42 U.S.C. §1396d. Not every recipient, much less any Plaintiff, will receive all of those services, and the amount of each service

14

that a recipient receives depends on that recipient's particular circumstances. Put differently, they are "a far cry from the sort of individualized, concrete monetary entitlement found enforceable" in *Maine v. Thiboutot*, 448 U.S. 1, 100 S. Ct. 2502, *Wright*, and *Wilder*. *See Gonzaga* 536 U.S. at 288 n.6, 122 S. Ct. at 2278 n.6. In *Gonzaga,* the Court explained that:

> (a)   In *Maine v. Thiboutot*, it allowed plaintiffs to "recover payments wrongfully withheld by a state agency in violation of the Social Security Act." *See Gonzaga*, 536 U.S. at 279, 122 S. Ct. at 2273.
>
> (b)   In *Wright v. Roanoke Redevelopment and Housing Authority,* the lawsuit involved a claim "by tenants to recover past overcharges under a rent-ceiling provision of the Public Housing Act . . . " *See Gonzaga,* 448 U.S. at 280, 122 S. Ct. at 2273.
>
> (c)   In *Wilder v. Virginia Hospital Assn.,* the lawsuit was brought by health care providers to "enforce a reimbursement provision of the Medicaid Act, on the ground that the provision, much like the rent-ceiling provision in *Wright,* explicitly conferred specific monetary entitlements on the plaintiffs." *See Gonzaga*, 536 U.S. at 280, 122 S. Ct. at 2274.

The generic description of the services at issue in Title XIX is a "far cry" from an "individualized, concrete monetary entitlement and speaks to an aggregate focus."[1]

The "substantially comply" standard of § 1396c and 42 C.F.R. § 430.45 is "inconsistent with individually enforceable rights." *See Arrington*, 2006 WL 321955 at 7. Such a standard indicates that the statute has an aggregate rather than an individualized focus. *Id.*

Title XIX includes an agency enforcement mechanism, and § 1396a(a)(3) requires the plan to include a hearing remedy for individuals. Plaintiffs claim that the State is in violation of § 1396a(a)(3), but such a hearing is available under the plan. In any event,

---

[1] The generic nature of the services and the individualized nature of the recipient's service package further indicate that the right Plaintiffs assert is "so vague and amorphous that its enforcement would strain judicial competence." *See Blessing,* 520 U.S. at 340-41, 117 S. Ct. at 1359.

15

even the absence of an enforcement mechanism for individuals is not dispositive in favor of a privately enforceable right. Rather, as one of the factors to be considered, it is to be weighed in determining whether Congress spoke "with a clear voice to unambiguously manifest its intent to create enforceable rights." *31 Foster Children,* 329 F. 3d at 1273.

### C. This Court Should Dismiss Plaintiffs' Due Process Constitutional Claims

Plaintiffs' constitutional claims are due to be rejected. For the most part, those claims involve an attempt to turn alleged violations of federal statutes and regulations into constitutional claims. This Court should limit its analysis to the statutory and regulatory claims. If those statutory and regulatory claims have merit, the constitutional claim need not be addressed; if they have no merit, the constitutional claims will fail too.

Plaintiffs make only one claim, the claim that they have a due process right to adequate residential placement, day habilitation, other services, or all of them, No. 46 at 37, that appears to be grounded solely on the due process clause of the Fourteenth Amendment. The State Defendants recognize that "when [a] State takes a person into custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 199-200, 109 S. Ct. 998, 1005 (1989). That constitutional duty arises, however, with the State's assumption of custody over an individual. "As a general matter, a State is under no constitutional duty to provide substantive services for those with in its borders." *Youngberg v. Romeo,* 457 U.S. 307, 317, 102 S. Ct. 2452, 2459 (1982); *see also DeShaney,* 489 U.S. at 196, 109 S. Ct. at 1003. ("[T]he Due Process Clauses generally confer no affirmative right to governmental aid"); *Harris v. McRae*, 448 U.S. 297, 317-

16

18, 100 S. Ct. 2671, 2688 (1980) (The Due Process Clause "does not confer an entitlement to such [governmental aid] as may be necessary to realize all the advantages of that freedom" from unwarranted governmental interference.).  Accordingly, the State Defendants disagree with the contention that they have a constitutional duty to provide habilitation to the Plaintiffs.  If there is such a duty, it is a statutory one.

## CONCLUSION

For the reasons stated above, this Court should enter judgment of the pleadings in favor of Governor Riley, Commissioner Houston, and the Alabama Department of Mental Health and Mental Retardation.

Respectfully submitted,

**TROY KING (KIN047)
ATTORNEY GENERAL
BY:**


s/ John J. Park, Jr.
John J. Park, Jr. Bar Number: (PAR041)
Assistant Attorney General
Office of the Attorney General
11 S. Union Street
Montgomery, AL  36130-0152
Telephone:  (334) 242-7300
Fax:  (334) 353-8440
E-mail:  jpark@ago.state.al.us

OF COUNSEL:
Courtney W. Tarver, Esq.
David E. Jackson, Esq.
State of Alabama Department of
  Mental Health and Mental Retardation
RSA Union Building
100 N. Union Street
P.O. Box 301410
Montgomery, AL 36130-1410
E-mail:  Courtney.Tarver@mh.alabama.gov
E-mail:  David.jackson@mh.alabama.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 17th day of February, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following (or by U.S. Mail to the non CM/ECF participants):

Robert R. Kracke, Esq.
Kracke, Thompson & Ellis
808 29th Street South
Suite 300
Birmingham, AL 35205

James A. Tucker, Esq.
Lauren Wilson-Carr, Esq.
Alabama Disabilities Advocacy Program
(ADAP)
P. O. Box 870395
Tuscaloosa, AL 35487-0395

Deborah A. Mattison, Esq.
Wiggins, Childs, Quinn & Pantanzis, PC
The Kress Building
301 19th Street North
Birmingham, AL 35203


**s/ John J. Park, Jr.**
John J. Park, Jr. Bar Number:  (PAR041)
Assistant Attorney General
Office of the Attorney General
11 S. Union Street
Montgomery, AL  36130-0152
Telephone:  (334) 242-7300
Fax:  (334) 353-8440
E-mail:  jpark@ago.state.al.us