IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SUSAN J. *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 2:00-cv-918-MEF |
| ) | |
| BOB RILEY, in his official capacity as ) | |
| Governor of the State of Alabama *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND O R D E R**

**I. INTRODUCTION**

This cause is before the Court on Defendants' Motion to Strike the Report of Celia Feinstein (Doc. # 189). The Report of Celia Feinstein (the "Feinstein Report") (Doc. # 187-3) was submitted in support of Plaintiffs' Response to Defendants' Motion for Summary Judgment (Doc. # 187), and makes several conclusions that support Plaintiffs' claims in this case. For the reasons stated herein, Defendants' Motion to Strike is due to be GRANTED.

**II. LEGAL STANDARD**

Rule 702 of the Federal Rules of Evidence provides that

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The Eleventh Circuit has outlined a three-part test for admitting expert testimony under Rule 702:

> Expert testimony may be admitted into evidence if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562-63 (11th Cir. 1998) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).

### III. DISCUSSION

**A. Feinstein is qualified to testify competently regarding waiting lists for Medicaid services**

Feinstein qualifies as an expert under Rule 702 based on her "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. First, Feinstein has assisted in the development of state service systems for persons with developmental disabilities. For example, she assisted Pennsylvania in its development of a system to prioritize services for persons with disabilities. Dep. of Celia Feinstein (Doc. # 189-3, Ex. B, at 19). Second, Feinstein has examined waiting list systems as an expert witness in several other states. C.V. of Celia Feinstein (Doc. # 198-3, Ex. B). Based on her experience, Feinstein is qualified to testify about Medicaid waiting lists, and she is capable of assisting the trier of fact in determining whether Defendants provided services to Plaintiffs with reasonable promptness.

**B. Standard for determining whether a state serves disabled persons with reasonable promptness**

Because Feinstein qualifies as an expert under Rule 702, the Court adopts her standard for determining whether a state provides services to disabled persons with reasonable promptness.

Feinstein testified that in order to determine whether a state serves disabled persons with reasonable promptness, she would have to know who is on the waiting list, and, for each person, what service or services are needed and the urgency of the need(s). (*Id.* at 198-99). Thus, one could not determine whether a state provides services with reasonable promptness if one knew only the average length of time that persons are on a waiting list. (*Id.* at 197-98).

The Court also adopts Feinstein's standard for determining whether a state's Home and Community Based ("HCB") waiver program cap is too low. She testified that she would have to know the budget of a community system, whether the system is at capacity, and if so, what it would take to enhance that capacity. (*Id.* at 45-46). Feinstein suggested that it is possible that other factors might be relevant in determining whether a state's cap is too low. (*Id.* at 46).

### C. Feinstein's assessment of Alabama's Medicaid waiver service system

This subsection will summarize what Feinstein examined in order to reach her conclusions. Feinstein reviewed numerous documents, interviewed one Plaintiff and several caregivers of named Plaintiffs, and discussed Alabama's Medicaid waiver system with professionals in the state.

Feinstein reviewed several documents that have been filed in this case, including (1) the Third Amended Complaint, (2) the briefs for and against the Second Motion for Class Certification, and (3) the affidavits of Fordyce Mitchell, Eranell McIntosh-Wilson, and mothers of some named Plaintiffs.

Feinstein also reviewed a December 23, 2004 memorandum from Mitchell to the 310 Agencies and Provider Agencies that described the new Alabama Waiting List Information System ("AWLIS") (Doc. # 189-4, Ex. B, at 72). The memo described the process for administering the waiting list, which is outlined in the affidavits of Fordyce Mitchell and Eranell McIntosh-Wilson and

-3-

the Facts section of the Memorandum Opinion and Order that granted the Second Motion for Class Certification. Feinstein also reviewed the written waiver programs.

Finally, Feinstein reviewed a blank Criticality Information Summary form, which is attached to Mitchell's memo. (*Id.* at 77). Case managers fill out this form after meeting the disabled person and his or her family. The form has space to list what waiver-reimbursed services the person needs and is waiting for, and why each service is needed. The Department uses the information on the form to determine the what services the person needs and the extent of the need.

Feinstein interviewed (1) Rico C., (2) the caregivers of Susan J., Beverly W., Rico C., and Tara L., and (3) "two or three" other caregivers. Dep. of Celia Feinstein (Doc. # 189-3, Ex. B, at 33-35).

Feinstein also interviewed two directors of 310 Boards and one director of People First of Alabama, an advocacy group. (*Id.* at 35-36).

### D. Under Feinstein's own standards, her conclusions are not reliable

#### 1. Opinion that Alabama does not provide services with reasonable promptness

Feinstein's opinion that Alabama does not provide services to disabled persons with reasonable promptness is not reliable under her standard. Feinstein testified that in order to determine whether a state is serving disabled persons with reasonable promptness, she would have to know who is on the waiting list, and, for each person, what service or services are needed and the urgency of the need(s). (*Id.* at 198-99). However, she based her opinion on only one factor—the existence of a waiting list. (*Id.* at 46).

Feinstein reviewed a document entitled "MR Waiting List Clients – Legal. Ranked by Waiting Date Within Global Criticality Score within Status." (Doc. 189-2, Ex. A, at 19). This

document does not appear to be in the record, and there is no evidence that it described what services each person needed and the urgency of the need.

Feinstein reviewed a blank criticality survey. She did not, however, review any completed surveys, which would have described what services each person needed and the urgency of the need. Dep. of Celia Feinstein (Doc. # 189-3, Ex. B, at 123-24). She did not interview any case managers, who fill out the criticality surveys after meeting with the disabled person. Thus, she did not have an opinion as to whether anyone was given an inappropriate ranking on the waiting list that she reviewed. (*Id.*).

Apart from her interviews with Rico C. and the caregivers of Susan J., Beverly W., Rico C., and Tara L., there is no evidence that Feinstein knew what services people on the waiting list needed and the urgency of the needs. Therefore, her opinion that Alabama does not provide services with reasonable promptness is not reliable under her standard, and it certainly does not meet the *Daubert* standard because it amounts to speculation. For the same reasons, her opinions that the criticality survey is too general and that case managers are not sufficiently trained are inadmissable.

### 2. Opinion that Alabama's waiver cap is too low

Feinstein's opinion that Alabama's HCB waiver cap is too low is also not reliable under her standard. Feinstein testified that the mere existence of a waiting list does not mean that a state's cap is too low, and that in order to determine whether a state's cap was too low one would also have to examine other factors, such as the budget of the programs. Feinstein testified that most states have waiting lists for services. In fact, Feinstein specializes in teaching states how to develop waiting lists. (*Id.* at 20-22). However, Feinstein based her conclusion solely on the fact that Alabama has a waiting list. There is no evidence that she examined the budget of the waiver programs or any

other factor.  Thus, under her standard, her conclusion is unreliable and thus due to be stricken.

### 3.Opinions regarding eligibility

The first section of Feinstein's report addresses her concerns regarding eligibility.  For the reasons stated below, none of these opinions should be admitted under the *Daubert* standard.

First, Feinstein states that Alabama does not sufficiently advertise its waiver services.  This opinion fails the *Daubert* test because there is no evidence that persons have not applied for waiver services because of Defendants' failure to advertise the services.

Second, Feinstein states that Alabama's eligibility process is too complex and that Alabama should use a system of presumptive eligibility.  Feinstein stated, and Plaintiffs do not dispute, that the "reasonable promptness" standard does not require Alabama to presume that each applicant is eligible.  Dep. of Celia Feinstein (Doc. # 189-3, Ex. B, at 68).  Therefore, Feinstein's opinion that presumptive eligibility would simplify and thus improve Alabama's eligibility process does not assist the Court in determining a fact in issue in this case.  *City of Tuscaloosa v. Harcros Chems, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)

Third, Feinstein states that Alabama has "lagged behind national trends" with respect the services it provides.  Feinstein stated that Alabama should offer more services that provide greater independence to disabled persons.  Dep. of Celia Feinstein (Doc. # 189-3, Ex. B, at 70-78).  However, Feinstein stated, and Plaintiffs do not dispute, that Defendants are not required by Medicaid law to offer services other than what Defendants currently offer.  (*Id.* at 73-74).  Most importantly, Feinstein's opinion is not reliable because she did not review information that indicates what services are offered by other states.  (*Id.* at 75, 78-79).

Finally, Feinstein stated that Alabama should do a better job of communicating with disabled

persons regarding eligibility. However, she did not study the quality of the services offered by 310 Boards, which are responsible for communications regarding eligibility. Dep. of Celia Feinstein (Doc. # 189-3, Ex. B, at 40). Therefore, this opinion is not reliable because Feinstein did not sufficiently study communications between 310 boards and disabled persons.

## IV. CONCLUSION

Although Feinstein is qualified to render an expert opinion on matters relevant to this case, her investigation was insufficient to make her opinion reliable. Accordingly, it is hereby

ORDERED that Defendants' Motion to Strike is GRANTED.

Done this 30th day of September, 2008.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE