IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SUSAN J., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:00-cv-918-MEF |
| | ) | |
| BOB RILEY, in his official capacity as | ) | (WO—Publish) |
| Governor of the State of Alabama, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiffs are adults with disabilities and mental retardation who bring this class action for declaratory and injunctive relief to declare their rights, to remedy alleged violations of the Social Security (Medicaid) Act, 42 U.S.C. §§ 1396 *et seq*., and to redress alleged deprivations of their due process rights under the Fourteenth Amendment to the United States Constitution.  This case is before the Court on the following summary judgment motions: Defendants' Motion for Summary Judgement as to All Claims Brought By Paul B. (Doc. # 127); Defendants' Motion for Summary Judgment as to All Claims Brought by Susan J., Angie D., Elizabeth A., Charles P., and Nicholas A. (Doc. # 152); Defendants' Motion for Summary Judgment (Doc. # 172); and Plaintiffs' Motion for Partial Summary Judgment on "Reasonable Promptness" Claim  (Doc. # 211).

For the reasons set forth in this Memorandum Opinion and Order, Defendants' Motion

1

for Summary Judgment as to All Claims Brought by Paul B. (Doc. # 127) is due to be DENIED.  Defendants' Motion for Summary Judgment as to All Claims Brought by Susan J., Angie D., Elizabeth A., Charles P., and Nicholas A. (Doc. # 152) is due to be GRANTED with respect to Elizabeth A. and Charles P., due to be DENIED with respect to Angie D. and Susan J, and due to be DENIED as moot with respect to Nicholas A. Defendants' Motion for Summary Judgment (Doc. # 172) is due to be GRANTED in part and DENIED in part, and Plaintiffs' Motion for Partial Summary Judgment on "Reasonable Promptness" Claim (Doc. # 211) is due to be DENIED.  In the end, all that remains (and they remain completely) are the claims of Subclasses Two and Three.

## II. JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiffs claims are pursuant to 42 U.S.C. § 1396 *et seq.*, § 1983, and the Due Process Clause of the Fourteenth Amendment.  The parties do not contest venue and personal jurisdiction, and the Court finds a sufficient basis for each.

## III.  PROCEDURAL HISTORY

On July 12, 2000, Named Plaintiffs filed suit against Don Siegelman in his official capacity as Governor of the State of Alabama, Kathy Sawyer in her official capacity as Commissioner of Mental Health and Mental Retardation for the State of Alabama, and the Alabama Department of Mental Health and Mental Retardation seeking declaratory and injunctive relief to enforce their rights under the Social Security (Medicaid) Act, 42 U.S.C.

2

§§ 1396 *et seq*. and the United States Constitution.  (Doc. #1.)  On May 20, 2003, the Court terminated Defendant Siegelman and added Defendant Bob Riley in his official capacity as Governor of the State of Alabama.  (Doc. # 21.)  Likewise, on August 17, 2007, the Court terminated Defendant Sawyer and added Defendant John Houston in his official capacity as Commissioner of the State of Alabama Department of Mental Health and Mental Retardation.  (Doc. # 117.)[1]

With leave of this Court, Plaintiffs filed a Second Amended Complaint on June 21, 2005  (Doc. # 46) and  Third Amended Complaint on July 26, 2007 (Doc. # 107) ("Third Amended Complaint").

On April 24, 2007, Plaintiffs filed a motion to certify the case as a class action (Doc. # 87), which this Court denied on September 12, 2007 (Doc. # 126).   Plaintiffs then filed a Second Motion to Certify Class (Doc. # 128), which this Court granted in part and denied in part on October 24, 2008 (Doc. # 222).   The Court certified two subclasses:

> Subclass Two:   All persons with mental retardation who have applied for services compensable under Alabama's Home and Community Based Waiver Programs but who have been adjudged ineligible and/or denied services without notice and opportunity for hearing.

> Subclass Three:   All persons with mental retardation who have applied for services compensable under Alabama's Home and Community Based Waiver Programs and have not received a reasonably prompt claims determination.

(Doc. # 222.)  Proposed Subclass One contained persons "with mental retardation who have

---

[1]The Court also terminated John Doe, a pseudonymous defendant, on April 9, 2007.

applied for services compensable under Alabama's Home and Community Based Waiver Programs and who have been determined to be eligible for services but who have not received them with reasonable promptness or have received inadequate or inappropriate services." The Court declined to certify this subclass because there was insufficient information available to make a numerosity determination. The Court also noted proposed Subclass One did not meet the adequacy requirement.

Upon joint motion of the Parties (Doc. # 225), the Court staid the case pending interlocutory appeal under Rule 26(f) (Doc. # 226). The Eleventh Circuit denied the Petition for Permission to Appeal on December 12, 2008. (Doc. # 227.) The Court then held a Status Conference (Doc. ## 228, 230), lifted the stay (Doc. # 232), and set this case for trial in the Court's June 29, 2009 term. (Doc. # 229.)

Currently before the Court are four motions for summary judgment filed by parties on both sides: (1) Defendants' Motion for Summary Judgment as to All Claims Brought By Paul B (Doc. # 127), filed on September 19, 2007; (2) Defendants' Motion for Summary Judgment as to All Claims Brought by Susan J., Angie D., Elizabeth A., Charles P., and Nicholas A. (Doc. # 152), filed on December 28, 2007; (3) Defendants' Motion for Summary Judgment (Doc. # 172), filed on January 22, 2008; and (4) Plaintiffs' Motion for Partial Summary Judgment on "Reasonable Promptness" Claim (Doc. # 211), filed on January 23, 2008. These four motions are ripe for disposition.

## IV. FACTS

The Memorandum Opinion and Order granting the Amended Motion for Class Certification provides a full account of the facts of this case. *See Susan J. v. Riley*, 254 F.R.D. 439, 445-50 (M.D. Ala. 2008) (Fuller, C.J.). The Court incorporates those largely undisputed facts by reference and assumes familiarity with them. This Section therefore provides only a brief summary of the case and a discussion of the claims of the named plaintiffs. The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the Motions. Because of the way this case has progressed, the Court has also considered its Order on Pretrial Hearing. (Doc. # 221.) There are cross-motions for summary judgment in this case, so the Court will consider the facts and reasonable inferences to be drawn from the facts in the light most favorable to the non-moving party as the Court considers each of the motions. With that caveat, the submissions of the parties, viewed in the light most favorable to the nonmoving party, establish the following relevant facts:

The named Plaintiffs represent a group of adults with mental retardation who are unable to care fully for themselves and require varying degrees of care and treatment. The Defendants are Bob Riley, in his official capacity as Governor of the State of Alabama, the Alabama Department of Mental Health and Mental Retardation (the "Department"), and John M. Houston ("Houston"), in his official capacity as Commissioner of the Department.

Plaintiffs seek placement in Alabama's Home and Community Based Waiver programs ("HCB Waiver" or "Waiver"), which includes both the Mental Retardation Waiver

program ("MR Waiver") and the Living at Home Waiver program ("LAH Waiver").  They also seek to enforce procedural protections they claim the Constitution and the Medicaid Act provide to applicants for slots in those programs. They present their claims in four counts. They claim:[2] (1) that Defendants have violated the Medicaid act by failing to provide ICF/MR and/or Waiver services with reasonable promptness as required by 42 U.S.C. § 1396a(a)(8); (2) that Defendants have also failed to comply with the comparability requirements of 42 U.S.C. § 1396a(a)(10); (3) that Defendants have deprived Plaintiffs of their right to apply pursuant to 42 U.S.C. § 1396a(a)(3); and (4) that Defendants have violated Plaintiffs' due process rights guaranteed by the United States Constitution.

### A. Susan J.

Susan J. is a forty-six year old female with Down Syndrome associated with mental retardation and a seizure disorder.  She applied for residential services in 1992 and withdrew her request for these services in 2007.  She applied for day habilitation services in 1993 and began receiving them in 1999.  She remains on the waiting list for respite services with a criticality score of one because she may want additional services in the future.  As of January 2008, her ranking on the waiting list was 1256.  She would like financial reimbursement for persons who transport her to her day habilitation program, but the state has not authorized such reimbursement under its Waiver program.

### B. Angie D.

---

[2]Each of these claims proceeds though the vehicle of 42 U.S.C. § 1983.

Angie D. is a thirty-one year old female with cerebral palsy associated with mental retardation.  She applied for day habilitation LAH Waiver services in 2000 and began receiving them in June 2007.  She is on the waiting list for residential services, but does not seek them at this time.  Angie D. is eligible for Medicaid medical assistance benefits.

### C. Elizabeth A.

Elizabeth A. is a twenty-eight year old female with Rett Syndrome, neurological problems, and mental retardation.  She applied for day habilitation Waiver services in 1995 and was offered these services in October 2006, but her mother turned them down because she thought they were inadequate.  From November 2006 to September 2007, while still on the waiting list for an MR Waiver slot, Elizabeth received twenty hours per week of respite and support services through another waiver program that is not at issue in this case.  As of July 24, 2007, she was number 499 on the waiting list.  In September 2007, she obtained an MR Waiver slot and began receiving eleven hours per day of in-home support services.   As she was receiving all the services she sought, Elizabeth was removed from the waiting list.

### D. Charles P.

Charles P. is a twenty-four year old male with mental retardation associated with autism.  He applied for day habilitation and supported employment services in 2005.  As of July 24, 2007, he was number 362 on the waiting list.  In August 2007, he obtained an LAH Waiver slot and is receiving day habilitation services and supported employment services. Charles P. is no longer on the waiting list.  He is eligible for and receives Medicaid medical

assistance benefits and Social Security Income.

### E. Paul B.

Paul B. is a twenty-two year old male with Down Syndrome, cerebral palsy, and severe developmental delays due to mental retardation. Paul applied for HCB Waiver services in approximately 1999. He is eligible for and received Medicaid medical assistance and Social Security Income. In May 2007, Paul was entered onto the list for day habilitation services, and was number 907 on that list on July 24, 2007. Paul aged out of the school system in May 2007, and was enrolled in the MR Waiver program in September of that year. He began receiving day habilitation services at that time. In September 2008, his mother requested additional services for him.

### F. Beverly W.

Beverly W. is a fifty year old female with mental retardation, brain damage, and possible fetal alcohol syndrome. She submitted paperwork requesting HCB Waiver services in 1992 and again in 1996 and is not receiving those services. Between 1996 and 2004 Beverly's caretaker received no communication regarding the status of Beverly's application or her place on the waiting list.

### G. Tara L.

Tara L. is a twenty-nine year old female with mental retardation and autism. Tara's caretaker applied for residential, day, and support services though the local 310 board. She is qualified for Medicaid medical assistance benefits, Targeted Case Management, and Social

Security Income.   As of September, 2008, Tara was number 462 on the waiting list for day habilitation services.  Tara is currently not receiving day habilitation services.

### H. Krystal W.

Krystal W. is a twenty-six year old female with mental retardation.  She is eligible for and receives Medicaid medical assistance benefits and Social Security Income.  Her mother claims she submitted a request to the Department of Mental Retardation in 2000 requesting day habilitation and group home services.  Her mother further claims that she made numerous calls to the relevant agencies to determine Krystal's status on the waiting list in the three years following the initial application.   Defendants contend they received the application in November 2007.  As of January 15, 2008, Krystal was number 464 on the waiting list.  She was approved for the LAH Waiver on August 26, 2008, and she began receiving day habilitation services three days later.

### I. Brishette W.

Brishette W. is a twenty-four year old female with mental retardation.  She is seeking day habilitation services, and, in 2005, submitted an application for those services.  She became eligible for Alabama Medicaid services in 2006, because she is a new Alabama resident.  As of September 2008, she is number 583 on the waiting list with a criticality score of four.  Brishette W. is not receiving HCB Waiver services.

### J. Rico C.

Rico C. is a thirty-four year old male with mental retardation.  He is eligible for and

9

receives Medicaid medical assistance and Social Security Income.  As of January 15, 2008, Rico was number 528 on the waiting list for day services and for residential services with a criticality score of four and one, respectively.

## K. Shavon H.

Shavon H. is a thirty-nine year old female with mental retardation, cerebral palsy, visual and hearing impairments, and digestive difficulties.  Shavon received day habilitation services for a brief period in 2002.  She subsequently declined offers for services and requested that her case be closed.  Shavon is not currently receiving Waiver services and is not on the waiting list.

## V.  Discussion: Jurisdictional Issues

Defendants advance two classes of jurisdictional arguments, which this Court must address prior to reaching the merits of the Motions.  *See Seaborn v. Florida*, 143 F.3d 1405, 1407 (11th Cir. 1998).  First are the familiar justiciability doctrines of standing, mootness, and ripeness.  Defendants argue that the claims of the individual plaintiffs are moot because each plaintiff is receiving reimbursement for all appropriate Waiver services.  Defendants also argue that Plaintiffs' claims are not ripe to the extent they concern services not yet requested and that Plaintiffs seek reimbursement for medical services that are not compensable, and that Plaintiffs do not have standing to seek prospective injunctive relief.  Second  are Eleventh Amendment and absolute sovereign immunity.  Defendants argue that this Court lacks jurisdiction to compel state Defendants to comply with state law and that the

Eleventh Amendment to the United States Constitution bars claims against the Alabama Department of Mental Health and Mental Retardation. The Court is satisfied that it has subject matter jurisdiction over the claims brought by Paul B., Angie D., Susan J., Brishette W., Rico C., Tara L., Beverly W., and Krystal W., but not over the claims brought by Elizabeth A., Charles P., and Shavon H. and not over claims brought against the Alabama Department of Mental Health and Mental Retardation. The Court therefore retains jurisdiction over the individual claims of Paul B., Angie D., Susan J., Brishette W., Rico C., Tara L., Beverly W., and Krystal W. and over the claims of both subclasses.

## A. Legal Standard

Defendants characterize their motions as ones for summary judgment, which they are to some extent. Defendants include in the motions, however, arguments that clearly attack the subject matter jurisdiction of this Court. Their arguments that various claims are moot or not ripe and that some plaintiffs do not have standing concern subject matter jurisdiction and are "appropriately dealt with by means of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *Troiano v. Supervisor of Elections in Palm Beach County, Fla.*, 382 F.3d 1276, 1278 n.2 (11th Cir. 2004). Therefore, when a party seeks to have a case dismissed on justiciabilty grounds, the district court should treat the motion as one to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), even if the party has labeled its motion as one for summary judgment. *See Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1182 (11th Cir. 2007) (mootness); *United States v. Blue Cross & Blue Shield of Ala.*,

*Inc.*, 156 F.3d 1098, 1101 n.7 (11th Cir.1998) (mootness); *Elend v. Basham*, 471 F.3d 1199

(11th Cir. 2006) (ripeness); *Hames v. City of Miami*, 479 F. Supp. 2d 1276 (M.D. Fla. 2007)

(subject matter jurisdiction).  To the extent these motions for summary judgment concern the

subject matter jurisdiction of the Court, the Court considers them under the standards of Rule

12(b)(1).

 "A Rule 12(b)(1) motion may challenge the court's subject matter jurisdiction based

on the face of the pleadings or based on the actual substantive facts of the case."  *Morrison*

*v. Amway Corp.*, 323 F.3d 920, 925  n.5 (11th Cir. 2003). These two forms of attack differ

substantially.  *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).  Where the

jurisdictional attack is based on the face of the pleadings, courts merely look to determine

whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the

allegations in the plaintiffs' complaint are taken as true for purposes of the motion. *Id.* at

1529.  When addressing a factual challenge, on the other hand, a court "is free to weigh the

evidence and satisfy itself as to the existence of its power to hear the case." *See id.* at

1528-29 (quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. May 20, 1981)).[3]

Generally, in the context of a factual challenge to jurisdiction, there is no presumption of

truthfulness in favor of the plaintiff's allegations and the existence of disputed material facts

will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

---

[3]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*), the
Eleventh Circuit Court of Appeals adopted as precedent decisions of the former Fifth Circuit
rendered prior to October 1, 1981

*See id.* at 1529-30. Because these jurisdictional challenges are made at a stage when the factual record is well developed, the Court will consider Defendants' jurisdictional arguments as factual challenges and will evaluate for itself the merits of their jurisdictional claims.

## B. Immunity

### 1. Eleventh Amendment

Defendants argue that "Plaintiffs' claims against the Alabama Department of Mental Health and Mental Retardation are barred by the Eleventh Amendment." (Doc. #178 83.) Because the Department enjoys Alabama's Eleventh Amendment immunity as a department of the State, Plaintiffs' claims against the Department are due to be dismissed.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has not, however, limited the application of this immunity to the suits described in the text of the Eleventh Amendment. The Court has extended a State's immunity to suits brought by the State's own citizens in order to respect the "broader concept of immunity" implicit in the Constitution and exemplified by the Eleventh Amendment. *Doe v. Chiles*, 136 F.3d 709, 719 (11th Cir. 1998) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997)). The decisions of the Supreme Court thus establish that "an unconsenting State is immune from suits brought in federal courts by

13

her own citizens as well as citizens of other states." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citing *Employees of Dep't of Pub. Health & Welfare, Mo. v. Dep't of Pub. Health & Welfare, Mo.*, 411 U.S. 279, 280 (1973)).

Agencies, departments, and instrumentalities of states are entitled to the same Eleventh Amendment immunity as the states themselves. *Pennhurst*, 465 U.S. at 100-01 (citing *Florida Dep't of Health v. Fla. Nursing Home Ass'n*, 450 U.S. 147 (1981) (per curiam); *Alabama v. Pugh*, 438 U.S. 781 (1978) ( per curiam )); *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir. 1985); *University of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411-12 (11th Cir. 1999) ("In the context of Eleventh Amendment immunity, we have held that state universities are "agencies or instrumentalities" of the state, and thus are immune from suit in federal court."). Whether the entity sued can be considered an agency, department, or instrumentality of the state is generally determined by reference to state law. *Harden*, 760 F.2d at 1163 (citing *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)); *Sessions v. Rusk State Hosp.*, 648 F.2d 1066 (5th Cir. June 26, 1981))[4]; *Cross v. Ala. Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (11th Cir. 1995). Factors that bear on this determination include the definition of "state" and "political subdivision"; the degree of state control over the entity; and the fiscal autonomy of the entity. *Harden*, 760 F.2d at 1163;

---

[4]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981

*Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1520 (11th Cir.1983).[5]

The issue of Eleventh Amendment immunity thus turns on whether the Alabama Department of Mental Health and Mental Retardation is an agency, department or instrumentality of the state.  The Court finds that it is.  In *Cross*, 49 F.3d at 1502-03, the Eleventh Circuit explained, in the Eleventh Amendment context, that "The Alabama Department of Mental Health and Mental Retardation is a department of the state government." (citing Ala.Code § 22-50-2 (1990)).  Furthermore, Alabama Code § 22-50-2 provides:

> There shall be created and established a department of the state government to be known as the Department of Mental Health and Mental Retardation. The department shall be composed of the State Mental Health and Mental Retardation Commissioner and such divisions and administrative sections as the Mental Health and Mental Retardation Commissioner may direct. The principal offices of the department shall be located at the state capitol. The department shall perform the functions prescribed in this chapter.

Moreover, the statutes that govern the Department make it clear that the degree of State control over the entity is absolute and the Department is not at all fiscally autonomous.  *See*

----

[5]States and their agencies and departments enjoy Eleventh Amendment protection regardless of the nature of the relief sought. *See, e.g.*, *Fouche*, 713 F.2d at 1523 (citing *Missouri v. Fiske*, 290 U.S. 18, 27 (1933) ("Expressly applying to suits in equity as well as at law, the Amendment necessarily embraces demands for the enforcement of equitable rights and the prosecution of equitable remedies when these are asserted and prosecuted by an individual against a State")); *Harden*, 760 F.2d at 1163 (noting that in *Alabama v. Pugh*, 438 U.S. 781 (1978), the Supreme Court "held that actions for injunctive relief against a state or its instrumentality were also barred by the Eleventh Amendment."); *See also* 3 Sheldon H. Nahmod, *Civil Rights and Civil Liberties Litigation* § 9:48 (4th ed. 2004) ("States and their "alter ego" agencies may not be sued in federal court directly in their own names either for damages or for declaratory and injunctive relief by virtue of the Eleventh Amendment.").

*Harden*, 760 F.2d at 1163; *Fouche*, 713 F.2d at 1520. Under the relevant provisions of the Alabama Code, the Department is required to "perform the functions described in this chapter," Ala. Code. § 22-50-2, the offices of the department are "at the state capitol," *id.*, all fees collected by the Department must be spent either within the Department or in support of state hospitals, *id.* § 22-50-3, the Governor is chairman of the board of trustees and appoints the members of the board, *id.* § 22-50-5, the trustees' expenses are paid from the state treasury, *id.* § 22-50-8, the Department must give an annual report to the Governor and distribute copies to members of the State legislature, *id.* § 22-50-13, the Department must request operating funds from the Governor who should include those requests in his appropriation bill, *id.* § 22-50-14, final decisions of the Department are subject to judicial review, *id.* § 22-50-19, and the Department may hire police officers to assist it in carrying out its tasks, *id.* § 22-50-21.

In light of the foregoing, the Court finds that the Alabama Department of Mental Health and Mental Retardation is an agency, department or instrumentality of the State, and is therefore entitled to Eleventh Amendment immunity in this case.[6] The degree of state control over the entity is complete, and the fiscal autonomy of the entity is slight. *See Harden*, 760 F.2d at 1163. Therefore, Defendants' Motion is due to be granted to the extent

---

[6] Congress has not abrogated Eleventh Amendment immunity for § 1983 cases like this one. *See Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir.1990). Neither has Alabama waived its immunity. *E.g.*, *Pugh*, 438 U.S. at 782.

it seeks dismissal of all claims against the Department.[7]

## 2. State Sovereign Immunity

Defendants also argue that "to the extent that Plaintiffs seek to enjoin the State Defendants to follow Alabama law . . . the State Defendants are entitled to absolute sovereign immunity." (Doc. # 178 81.)   The Court agrees that under *Pennhurst State School & Hospital v. Halderman* it lacks power to compel state officials to obey state law.[8]  *See* 465 U.S. 89, 106 (1984) (holding that federal courts are barred by the Eleventh Amendment from ordering state officials to conform their conduct to state law, even when only prospective injunctive relief is sought).   Plaintiffs have not requested this Court issue an injunction compelling compliance with state law, and their claim seeks vindication of federal statutory and constitutional rights.   While this argument currently appears to be irrelevant to this Case, Defendants' Motion for Summary Judgment is due to be granted to the extent it seeks to prevent this Court from compelling state officials to comply with state law.

## C.  Justiciability

The courts of the United States are courts of limited jurisdiction.  The Constitution of the United States, Article III, Section 2, provides that the judicial power of the United States

_____

[7] None of this has any effect, of course, on the official capacity claims against the individual defendants for prospective injunctive relief, as those claims fit neatly within the *Ex parte Young* doctrine. *Ex parte Young*, 209 U.S. 123, 156 (1908); *see also Wu v. Thomas*, 863 F.2d 1543, 1550 (11th Cir.1989);  *Parker v. Williams*, 862 F.2d 1471, 1475 (11th Cir.1989).

[8] Alabama has not waived its state sovereign immunity.  Ala.  Const.  art.I, § 14 ("[t]he State of Alabama shall never be made a defendant in any court of law or equity").

shall extend only to "cases" and "controversies." U.S. Const. art. III, § 2; *see also Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1327 (11th Cir. 2004) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992)).  Defendants argue that Plaintiffs lack standing,[9]  that their claims are moot, and that some of their claims are not ripe.[10]

### 1.  Legal Framework

Mootness is among the limitations placed on the power of the federal courts because "[b]y its very nature, a moot suit 'cannot present an Article III case or controversy.'"  *Nat'l Advertising Co. v. City of Miami*, 402 F.3d 1329, 1332 (11th Cir. 2005) (citing *Coral Springs*, 371 F.3d at 1328).  "A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1183 (11th Cir. 2007) (quoting *Triano v. Supervisor of*

---

[9] Defendants conflate the concepts of standing and mootness when they argue Plaintiffs lack standing.  (Doc. # 178 63-65.)  As the Supreme Court has explained, "the doctrine of mootness can be described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth, Inc. v. Laidlaw Evntl. Serv.*, 528 U.S. 167, 189-90 (2000); *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1189 n.16 (11th Cir. 2007).  In other words, standing is determined as of when the case is filed.  *See Laidlaw*, 528 U.S. 167.  Here, Defendants do not dispute that Plaintiffs had standing when the case was filed.  Rather, they argue that Plaintiffs' claims are moot because of the provision of Waiver services subsequent to the commencement of this litigation.  Therefore, Defendants' motions for summary judgment are due to be denied to the extent Defendants argue Plaintiffs lack standing.

[10] Defendants' claims that because to some extent Plaintiffs intend to seek services at some unspecified time in the future, their claims are not ripe lacks merit.  Plaintiffs' future need for services is not the basis of their claims.  To the contrary, their alleged previous deprivations are the basis of their claims.  Their claimed future needs simply allow the case to be heard even if the claims would otherwise be moot, as the future needs create a probability that the same Plaintiff will be subjected to the same wrongdoing in the future.  This exception to the mootness doctrine is explained more fully below.

*Elections in Palm Beach County, Fla.*, 382 F.3d 1276, 1281-82 (11th Cir. 2004)).  There are

three exceptions to the mootness doctrine:

First, the doctrine of voluntary cessation provides an important exception to the

general rule that a case is mooted by the end of the offending behavior.  *Sheely*, 505 F.3d at

1184 (citing *Triano*, 382 F.3d at 1282).  "It is well settled that a defendant's voluntary

cessation of a challenged practice does not deprive a federal court of its power to determine

the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,

528 U.S. 167, 189 (2000).  A defendant who asserts that a plaintiff's claims are moot because

of the defendant's voluntary conduct bears the "heavy burden of persuading the court that

the challenged conduct cannot reasonably be expected to start up again." *Id.*; *United States*

*v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968) (noting that the test for

mootness in cases of voluntary cessation is "a stringent one" and that "[a] case might become

moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could

not reasonably be expected to recur").  "A defendant's assertion that it has no intention of

reinstating the challenged practice 'does not suffice to make a case moot' and is but 'one of

the factors to be considered in determining the appropriateness of granting an injunction

against the now-discontinued acts.'" *Sheely*, 505 F.3d at 1184 (citing *United States v. W.T.*

*Grant Co.*, 345 U.S. 629, 633 (1953)).   In the Eleventh Circuit, government actors are

entitled to "the benefit of a rebuttable presumption that the offending behavior will not

recur." *Sheely*, 505 F.3d at 1184; *Coral Springs,* 371 F.3d at 1328-29.  District courts must,

19

however, "beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption." *Sec'y of Labor, U.S. Dep't of Labor v. Burger King Corp.*, 955 F.2d 681, 684 (11th Cir. 1992) (quoting *United States v. Oregon State Med. Soc'y*, 343 U.S. 326, 333 (1952)).

Second, a district court may entertain a moot case if it arises from a situation that is "capable of repetition, yet evading review." *Bourgeois v. Peters*, 387 F.3d 1303, 1308 (11th Cir. 2004) (citation omitted).  This exception has two requirements:  "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam)).

Finally, with respect to class actions, a named Plaintiffs' claim "must be live both at the time he brings suit and when the district court determines whether to certify the putative class.  If the plaintiff's claim is not live, the court lacks a justiciable controversy and must dismiss the claim as moot." *Tucker v. Phyfer*, 819 F.2d 1030, 1033 (11th Cir. 1987) (citations omitted).  In other words, "a lawsuit brought as a class action must present justiciable claims at each stage of the litigation; if the named plaintiffs' individual claims become moot before a class has been certified, no justiciable claims are at that point before the court and the case must as a general rule be dismissed for mootness." *Zeidman v. J. Ray*

*McDermott & Co., Inc.*, 651 F.2d 1030, 1046 (5th Cir. Unit A, July 27, 1981).[11]  In cases where the named Plaintiffs' claims became moot after class certification, the Plaintiff may retain standing to pursue the class action because the class has a "legal status separate from the interest asserted by the [named plaintiffs]." *Tucker*, 819 F.2d at 1034 (quoting *Sosna v. Iowa*, 419 U.S. 393, 399 (1975)).  The act of certification brings the unnamed members of the class before the court for Article III purposes; so long as their claims are justiciable, the mootness of the original named plaintiff's claim does not require dismissal. *Zeidman*, 651 F.2d at 1045.

## 2.  Discussion

Defendants argue first that the claims of Paul B., Susan J., Angie D., Elizabeth A., Charles P., and Nicholas A. are moot.[12]  (Doc. ## 127, 153.)  Defendants also argue more globally that "Plaintiffs' claims are moot because their needs have been [met] to the extent required under the existing terms of the controlling HCB waiver documents." (Doc. # 178.)

As an initial matter, because part of this case is a class action, the claims of the subclass representatives  must not be moot when the district court determines whether to certify the putative class. *Tucker*, 819 F.2d at 1033.  This Court certified the class in this

---

[11]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981

[12]The claims of Nicholas A.  were voluntarily dismissed by a prior order of this court. (Doc. # 215.)  Therefore, Defendants' Motion is due to be dismissed as moot to the extent it seeks to have the claims of Nicholas A. dismissed.

case on October 24, 2008.  If the claims of Named Plaintiffs who are members of the certified subclasses became moot before that date, their claims must be dismissed.   The Court continues to have jurisdiction, however, over the claims of the other named Plaintiffs who represent Subclasses Two and Three if their claims became moot after class certification. *See id.* at 1034; *Zeidman v. J. Ray McDermott & Co. Inc.*, 651 F.2d 1030, 1045 (5th Cir. July 27, 1981)[13]   Additionally, if the claims of Named Plaintiffs who are not members of either certified subclass are moot now (or become so at any later point prior to judgment), their claims must be dismissed.[14]

First, the Claims of Paul B. are not moot.  The Complaint alleged that Paul B. needs but is not receiving day habilitation services.  At the time of Defendants' Motion as to Paul B., he was receiving all requested services and was no longer on the waiting list for services. He was in a MR Waiver slot and was receiving compensation for all services provided to him in accordance with the terms of the HCB Waiver documents.  However, in September, 2008, Paul's mother requested additional services for him.  Therefore, his claim is not moot and Defendants' Motion for Summary Judgment as to All Claims Brought by Paul B. is due to be denied.

---

[13]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

[14]The distinction between Named Plaintiffs who are class members and Plaintiffs who are not members of the certified classes proves unimportant to the decision of these Motions, as the Court does not have information that shows that the status of any Named Plaintiff changed between the class certification and the date of this Opinion and Order.

The claims of Elizabeth A. and Charles P. are moot because neither of them is on the waiting list and they are both receiving all the services they requested.  Elizabeth A. has been placed in a MR Waiver slot and receives in-home support services.  Charles P. is enrolled in a LAH Waiver slot and attends a day habilitation program.  Plaintiffs argue that Defendants have voluntarily ceased the offending behavior and would be free to resume it at any time.  However, Plaintiffs have not meet the burden of overcoming the "rebuttable presumption that the offending behavior will not recur" to which the government defendants are entitled.  *Sheely*, 505 F.3d at 1184; *Coral Springs,* 371 F.3d at 1328-29.  Finally, Plaintiffs' argument that these claims are "capable of repetition, yet evading review," fails because there is no " reasonable expectation that the same complaining party would be subjected to the same action again"  because neither Elizabeth A. nor Charles P. is on the waiting list. *See Bourgeois*, 387 F.3d at 1308.  The undisputed evidence in this case also shows that once a person is in a Waiver slot, they usually only leave the slot because of relocation out-of-state or death.  Therefore, Defendants' Motion for Summary Judgment as to All Claims of Susan J., Angie D., Elizabeth A., Charles P., and Nicholas A. is due to be granted in part.  It is due to be granted with respect to Elizabeth A. and Charles P.

On the other hand, the claims of Angie D. and Susan J. are not moot.  Angie D. has been placed in a LAH Waiver slot and therefore is receiving the assistance she has requested.  However, she remains on the waiting list for residential services, and her claims, to the extent they would otherwise be moot, are "capable of repetition, yet evading review," because there

is a " reasonable expectation that the same complaining party would be subjected to the same action again." *Bourgeois*, 387 F.3d at 1308. Because Angie D. is on the waiting list for residential services, it is reasonable to expect she will need those services in the future. *See id*. Similarly, Susan J. remains on the waiting list for support services. Therefore, to the extent her individual claims would otherwise be moot, they are "capable of repetition, yet evading review," because there is a " reasonable expectation that the [Susan J.] would be subjected to the same action again." *Id*. Therefore, Defendants' Motion for Summary Judgment as to All Claims of Susan J., Angie D., Elizabeth A., Charles P., and Nicholas A. is due to be denied in part. It is due to be denied with respect to Angie D. and Susan J.

Defendants also argue more generally that "Plaintiffs' claims are moot because their needs have been [met] to the extent required under the existing terms of the controlling HCB waiver documents." (Doc. # 178). Having already made determinations regarding the claims of Susan J., Elizabeth A., Charles P., Paul B., Angie D., and Nicholas A., the Court now turns to the claims of Beverly W., Tara L., Krystal W., Brishette W., Rico C., and Shavon H. This Court previously determined that the claims of Tara L., Beverly W., and Krystal W. were justiciable. *Susan J.*, 254 F.R.D. at 449-50. Because the Court has no information to indicate their situations have changed since its prior Order, the Court is satisfied that their claims are justiciable and are not moot. Therefore, Defendants' Motion for Summary Judgment is due to be denied to the extent it seeks to have the claims of Tara L., Beverly W., and Krystal W. dismissed.

Turning to the claims of Brishette W., Rico C., and Shavon H., the Court notes that Brishette W. is on the waiting list for services, ranked number 583 with a criticality score of four. Rico C. is on the waiting list for residential services and day services, with a criticality score of one and four, respectively. He is ranked number 528 on the waiting list. Finally, Shavon H. has declined offers for services and requested that her case be closed. She is therefore no longer on the waiting list. After reviewing the facts, the Court finds that the claims of Brishette W. and Rico C. present live controversies, but that the claims of Shavon H. do not at this time present a justiciable dispute. Therefore, Defendants' Motion for Summary Judgment is due to be granted in part and denied in part. The Motion is due to be granted with respect to Shavon H. and denied with respect to Brishette W. and Rico C.

### VI. Discussion: Substantive Issues

Defendants seek summary judgment on all of Plaintiffs' claims. Defendants' Motion can be granted summarily with respect to Counts II and IV because of this Court's prior rulings. The Court will then subject remaining claims to the tests posed by Defendants' Motions and will determine whether Plaintiffs are entitled to summary judgment on the reasonable promptness claim.

### A. Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v.*
*Catrett*, 477 U.S. 317, 322 (1986).  "An issue of fact is 'genuine' if the record as a whole
could lead a reasonable trier of fact to find for the nonmoving party.   An issue is 'material'
if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc.*
*v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty*
*Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of
informing the district court of the basis for its motion, and identifying those portions of 'the
pleadings, depositions, answers to interrogatories, and admissions on file, together with the
affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material
fact." *Celotex*, 477 U.S. at 323.  The movant can meet this burden by presenting evidence
showing there is no dispute of material fact, or by showing the nonmoving party has failed
to present evidence in support of some element of its case on which it bears the ultimate
burden of proof.  *Id.* at 322-23.  Once the moving party has met its burden, Rule 56(e)
"requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by
the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts
showing that there is a genuine issue for trial.'"  *Id.* at 324.  To avoid summary judgment, the
nonmoving party "must do more than simply show that there is some metaphysical doubt as
to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586
(1986).  On the other hand, a court ruling on a motion for summary judgment must believe

the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the Court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### B. Counts II and IV

On October 24, 2008, this Court granted in part and denied in part Plaintiffs' Motion to Certify Class. *Susan J. v. Riley*, 254 F.R.D. 439 (M.D. Ala. 2008) (Fuller, C.J.). In their opposition to class certification, Defendants argued Named Plaintiffs lacked standing to bring the claims associated with their respective subclasses. The nature of the standing challenge required the Court to decide whether Plaintiffs' four counts stated grounds for relief. With respect to Count II, which alleges Defendants' violated Medicaid's comparability requirements, this Court stated:

> Plaintiffs' second count alleges that Defendants violated 42 U.S.C. § 1396a(a)(10)(B) by failing to provide comparable services to Waiver participants. As a general matter, when states provide assistance under Medicaid programs, benefits must be comparable among recipients. *See* 42 U.S.C. § 1396a(a)(10)(B); *see also Fisher v. Oklahoma Health Care Auth.*, 335 F.3d 1175, 1186 n.12 (10th Cir. 2003). However, states may waive the comparability requirement for programs such as the HCB Waiver programs at issue in this case. Section 42 U.S.C. § 1396n(c)(3) provides that
>
>> A waiver granted under this subsection may include a waiver of the requirements of section 1396a(a)(1) of this title (relating to statewideness), section 1396a(a)(10)(B) of this title (relating to comparability), and section 1396a(a)(10)(C)(i)(III) of this title (relating to income and resource rules applicable in the

27

community).

> As is plainly permissible on the face of this statute, Alabama's HCB Waiver programs include a waiver of the comparability requirement.  As such, Alabama is not required to provide comparable services across participants in the HCB Waiver programs. In other words, Plaintiffs enjoy no statutory right to comparable treatment in the context of the HCB Waiver programs.

*Susan J.*, 254 F.R.D. at 455 (internal footnotes omitted).  In their Motion for Summary Judgment, Defendants correctly point out that "The State of Alabama has waived comparability under 42 U.S.C. § 1396a(a)(10)(B)." (Doc. # 178 79.)  Defendants also offer the uncontroverted affidavit testimony of Eranell McIntosh-Wilson, who stated that "With respect to the MR Waiver program and the LAH Waiver program, Alabama has elected to waive the requirements of 42 U.S.C. § 1396a(a)(10)(B).  Thus the comparability requirement does not apply to Alabama's HCB Waiver programs" (*Id.* Ex. B ¶ 3.)  In accordance with the Court's  earlier holding and the undisputed facts, Defendants' Motions for Summary Judgment are due to be granted to the extent they seek to have Count II dismissed.

Similarly, Defendants' opposition to class certification required the Court to determine the scope of the right allegedly protected by the substantive due process protections of the Fourteenth Amendment to the United States Constitution.  With respect to Count IV, this Court said:

> Count IV of Plaintiffs' Third Amended Complaint alleges that Defendants violated the Constitutional rights of the putative class members by "fail[ing] or refus[ing] to remedy the known and continuing violation of plaintiffs' clearly established constitutional rights to habilitation, care, and treatment." The Court cannot locate, in

28

caselaw or elsewhere, support for the proposition that there is a "clearly established constitutional right to habilitation, care, [or] treatment." Because there is no substantive due process right that guarantees protection from the conduct Plaintiffs complain of, there is no alleged violation of § 1983, and that statute cannot support standing in this case. Accordingly, Plaintiffs' Motion for Class Certification is DENIED to the extent the subclasses implicate alleged violations of substantive due process rights.

*Susan J.*, 254 F.R.D. at 457-58 (internal footnotes and citation omitted). In accordance with this holding, Defendants' Motions for Summary Judgment are due to be granted to the extent they seek to have Count IV dismissed.

### C.  ICF/MR and HCB Waiver

Defendants argue they are entitled to summary judgment "as to any ICF-MR claims asserted by the Plaintiffs in this case." (Doc. # 178 48.) Defendants' felt need to argue against ICF/MR claims is a result of Plaintiffs' repeated use of "ICF-MR and/or waiver services" language. (Doc. # 46 33); (Doc. 107 ¶ ¶ 1, 26); (Doc. # 170 ¶¶ 6(a), (b), (c), & (d)).[15] After Defendants filed the Motions currently under submission, Plaintiffs clarified that "they do not seek institutional placement (ICF/MR) services." (Doc. # 183 ¶¶ 3(a)-(d)); (Doc. # 187 20) ("plaintiffs do not actively seek to be institutionalized"). Plaintiffs have stated that they employed the "and/or" language because eligibility for ICF/MR services is a prerequisite for participation in the HCB Waiver program.

---

[15]ICF/MR services are medical services from an intermediate care facility for persons with mental retardation. *See, e.g., Sabree v. Richman*, 367 F.3d 180 (3d Cir. 2004). As discussed more fully above, HCB Waiver services are provided in home and community based settings.

29

Nevertheless, Defendants moved for summary judgment on any ICF/MR claims, so the Court will decide the issue.  As discussed above, Plaintiffs do not seek ICF/MR services. Additionally, Defendants discovered and adduced uncontroverted evidence that none of the Named Plaintiffs sought ICF/MR placement.  (Doc. # 195 4 n.2.)  While it is not clear to the Court that there are any claims in this Case that seek ICF/MR placement, to the extent Plaintiffs do seek placement in an ICF/MR institution, Defendants' Motion for Summary Judgment is due to be granted.

### D.  Remaining Individual Claims

Plaintiffs' proposed Subclass One contained persons who have been determined eligible, but have not received services with reasonable promptness in violation of § 1396a(a)(8).  The Court previously denied certification of this class because of problems with adequacy and numerosity.  *Susan J.*, 254 F.R.D. at 458-59, 459 n.26.  The individual claims of members of this putative subclass remain, however.[16]  Defendants mount numerous challenges to these claims in particular, and Plaintiffs have moved for summary judgment on these claims as well.

### 1. Legal Framework

The remaining individual claims seek remedy for violations of the reasonable promptness requirement of § 1396a(a)(8).  As discussed more fully in this Court's Class Certification Order, the Medicaid Act requires states provide some services and permits them

---

[16]Nothing in this Section is intended to affect the claims of Subclasses Two and Three.

to provide other services. The latter group is referred to as "optional services," and the HCB Waiver programs are optional services. While it is true that the Waiver program is governed by an agreement between the state and the federal government, "when a state elects to provide an optional service, that service becomes part of the state Medicaid plan and is subject to the requirements of federal law." *Susan J.*, 254 F.R.D. at 451 (citing *Doe v. Chiles*, 136 F.3d 709, 714 (11th Cir.1998)); *see also Boulet v. Cellucci*, 107 F. Supp. 2d 61, 76 (D. Mass. 2000) ("once a state opts to implement a waiver program and sets out eligibility requirements for that program, eligible individuals are entitled to those services and to the associated protections of the Medicaid Act"). Section 1396a(a)(8) provides:

> [A state plan for medical assistance must] provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals.

### 2. Discussion

#### a. Finite and Discretionary

Defendants first argue that "because participation in the HCB Waiver programs is both finite and discretionary, there is no entitlement either to participate in the Waiver programs or to receive financial reimbursement for any particular waiver services." (Doc. # 178 48.)  The thrust of this argument is that Plaintiffs have no right to complain about not receiving medical assistance with reasonable promptness because they have no legitimate claim of entitlement to such assistance under the Waiver.  Defendants cite the report of their

expert, which contains the following language:

> The services and supports of all state HCB waiver programs, including those in Alabama, are not an entitlement for individuals just because they are eligible for Medicaid services. . . . [A] person must be fully enrolled in an HCBS waiver program before he or she is entitled to receive services offered through the waiver.  Even then, the individual must have an assessed need for the service and the service must be determined necessary to assure his health and welfare.

(Doc. # 178 49) (quoting Doc. # 179 Ex. A, Affidavit of Cathy Anderson ¶ 24.)  Defendants contrast this with their characterization of Plaintiffs' position: an assertion "that everyone who is on the waiting list is entitled to an HCB Waiver slot, and that the State Defendants must therefore unilaterally increase the cap on the HCB Waiver to provide unlimited financial reimbursements for everyone on that list." (Doc. # 178 50.)  Defendants' argument stands on three legs:

### i. The Cap

First, Defendants argue that because of the existence of a legal cap on the number of eligible Waiver participants, no one has a "right" to medical assistance under the Waiver.[17] However, the cap on Waiver participation is "simply a constraint on eligibility" and does not relieve Defendants of their statutory obligations with respect to individuals who would not exceed the cap and otherwise meet the eligibility requirements. *Susan J.*, 254 F.R.D. at 454.

---

[17]The cap itself is clearly proper. *See* 42 U.S.C. §§ 1396n(c)(9), 1396n(c)(10); 42 C.F.R. § 441.303(f)(6) ("The State must indicate the number of unduplicated beneficiaries to which it intends to provide waiver services in each year of its program.  The number will constitute a limit on the size of the waiver program unless the State requests and the Secretary approves a greater number of waiver participants in a waiver amendment."); *Mandy R. v. Owens*, 464 F.3d 1139, 1142 (10th Cir. 2006); *see also Susan J.*, 254 F.R.D. at 454 n.12.

"Individuals who apply after the cap has been reached are not eligible . . . . [T]he eligible individuals under the cap are entitled to waiver services. In short, the cap does not support the defendants' position that the state has total discretion in providing waiver services." *Id.* (quoting *Boulet*, 107 F. Supp. 2d at 77-78).   Therefore, the reasonable promptness provision applies to medical assistance if an individual can prove that he or she is entitled to a vacant slot or is allocated a  slot and the individual is eligible for the assistance, but not when a person meets the preliminary eligibility requirements and a slot is not available. *Id.* Eligible individuals under the cap are entitled to medical assistance under the applicable Waiver and to the provision of such assistance with reasonable promptness.

Therefore, Defendants' argument is not fatal to Plaintiffs' claim, because the cap merely limits the eligible persons to those who (1) meet the preliminary  requirements for participation in the HCB Waiver programs, and (2) are entitled to one of the lawfully limited number of Waiver slots that exist.[18]   The import of this holding is not, as Defendants assert, that *no one* has a right to medical assistance when slots are available. To the contrary, some persons do have a right to assistance and to provision of such assistance in compliance with the requirements of the Medicaid Act.

### ii. Services are Limited

Second, Defendants argue that the services compensable under the HCB Waivers are limited.  According to the uncontroverted affidavit testimony of Eranell McIntosh-Wilson,

---

[18]To be clear, even eligible individuals are only entitled to those services provided for under the controlling HCB Waiver documents, as detailed in the next subsection.

"the specific terms of Alabama's HCB Waivers have been negotiated between the Alabama Medicaid Agency and the federal Center for Medicaid and Medicare Services (CMS) pursuant to Section 1915(c) of the Social Security Act." (Doc. # 178 Ex. B ¶ 3.) This is in accord with the statutory requirements set out in 42 U.S.C. § 1396n(c). Once approved, the Waiver application becomes the controlling document. *See* 42 C.F.R. § 430.25(e)-(h); *see also* (Doc. # 178 Ex. B ¶ 28.) As a result, "Alabama's HCB Waivers are limited in scope, both with respect to the array of reimbursable services and with respect to the number of eligible recipients." (Doc. # 178 Ex. B ¶ 5.) With respect to the array of reimbursable services, the MR Waiver is limited to those listed in a catalogue submitted with the affidavit of Eranell McIntosh-Wilson.[19] The services available under the LAH Waiver program are the same, except that residential habilitation in a group home is not available under the LAH Waiver. According to Defendants' expert, Cathy Anderson, "[a] Person must be fully enrolled in an HCBS Waiver program before he or she is entitled to receive services offered through the Waiver. Even then, the individual must have an assessed need for the service and the service must be determined necessary to assure his or her health or welfare." (Doc. # 178 Ex A ¶ 24.)

It is clear from the above that the statutory scheme that established the HCB Waiver

---

[19]The Medicaid HCBS MR Waiver Service Catalog provides that the following services are available under the MR Waiver: personal care services, respite care, residential habilitation, day habilitation, prevocational services, supported employment services, environmental accessability adaptations, skilled nursing, specialized medical equipment and supplies, adult companion services, assistive technology, speech and language therapy, physical therapy, occupational therapy, behavior therapy, community specialist services, and crisis intervention.

programs envisioned programs of limited scope. *See Susan J.*, 254 F.R.D. at 447-48, 455-56. In particular, the Waiver programs are limited in the variety of services offered through the Waiver program.[20]   Defendants' Motions are due to be granted to the extent they seek dismissal of all or part of the claims of Plaintiffs who (1) seek services not provided for in the documents that govern the terms of the HCB Waiver programs, and/or (2) cannot prove that they are one of the eligible recipients.[21] Plaintiffs Motion is due to be denied it seeks the provision of assistance to ineligible persons.

### iii. The Waiting List

Finally, Defendants argue that the use of the waiting list is irrelevant to Plaintiffs' claims.  Plaintiffs challenge the administration of the waiting list as violative of the Medicaid Act's reasonable promptness requirement.  They argue that Defendants have transgressed the dictates of the statute by allowing the waiting list to grow and allowing unserved persons to languish on the list.  Defendants counter that the waiting list is entirely permissible because

---

[20]The limitation on the number of persons served, i.e. the cap, was dealt with primarily in the previous subsection.

[21]As this Court previously held, "eligible persons . . . are those who (1) meet the requirements for participation in the HCB Waiver programs, and (2) are entitled to one of the lawfully limited number of waiver slots that exist.  In other words, if a slot is not available, a person is not eligible, . . . even if that person otherwise meets the eligibility requirements." *Susan J.*, 254 F.R.D. at 454.

Plaintiffs claim that "it is undisputed that the defendants have already determined that at least ten of the eleven plaintiffs are eligible for the services at issue, [a]nd an issue of fact exists as to the eleventh plaintiff, Beverly W." (Doc. # 187 at 24.)  Defendants have determined that at least ten of the eleven plaintiffs meet the preliminary eligibility requirements for participation in the HCB Waiver programs, not that each of the ten is entitled to one of the lawfully limited number of Waiver slots.

the number of eligible recipients far outstrips the number of available Waiver slots.

The Court agrees with Defendants that the waiting list is an entirely permissible way to manage the significant population of persons who are otherwise eligible for medical assistance under the Waivers, but for whom no slot is available.[22]  As discussed in the preceding sections, the Waiver statute provides eligible individuals in Alabama with an entitlement to medical assistance under the Waiver program and affords them the protections of the Medicaid Act with respect to such assistance.  *Susan J.*, at 454 (citing *Chiles*, 136 F.3d at 714).  Only those persons who both (1) meet the preliminary eligibility requirements for participation in the Waiver program, as indicated by their presence on the waiting lists, and (2) are entitled to one of the few Waiver slots are entitled to the provision of medical assistance with reasonable promptness.  *Id.*  The many persons who are on the waiting list, who evidently meet the preliminary eligibility requirements, but who are not entitled to one of the few available Waiver slots are not entitled to the provision of medical assistance with reasonable promptness.  *See id.*  Therefore, Plaintiffs who are not either actually in a Waiver slot or entitled to one have no legal basis to support their claim for the provision of assistance with reasonable promptness.  Moreover, Alabama's use of a waiting list is not unusual. According to the uncontroverted testimony of Defendants' expert, it is "not unusual for states to have waiting lists for services." (Doc. # 178 Ex. A ¶ 21.)  Therefore, the Court is satisfied

---

[22]This not to say that placing an individual on the waiting list when they meet the preliminary eligibility requirements *and* are entitled to a Waiver slot is not a violation of such an individual's right to the provision of medical assistance with reasonable promptness under the Medicaid Act. *See Boulet*, 107 F. Supp. 2d at 79-80.

that the existence of the waiting list is immaterial.  Defendants' Motion is due to be granted to the extent Plaintiffs seek alterations to the administration of the waiting list and to the extent Plaintiffs claim an entitlement to the provision of medical assistance with reasonable promptness but are not either in a Waiver slot or entitled to one.  Plaintiffs' Motion is due to be denied to the extent it seeks a remedy for the existence of a waiting list or for the provision of assistance to persons who are on the waiting list but do not meet the other eligibility requirements.

### iv. Conclusion

Defendants are partially right when they say that "Plaintiffs are asking this Court to re-write the terms of the HCB Waiver agreements negotiated between the federal CMS and the Alabama Medicaid Agency." (Doc. # 178 50.)  This the Court can not and will not do. However, Defendants urge too much when they claim the terms of the Waiver documents doom Plaintiffs' reasonable promptness claims.  The terms of the Waiver documents seem to preclude one remedy Plaintiffs appear to seek: expanded capacity in the Waiver programs. Nevertheless, there is a group of persons who are entitled to the provision of medical assistance under the Waiver program with reasonable promptness—those who (1) meet the eligibility requirements for participation in the program, and (2) are entitled to one of the lawfully limited number of slots available in the Waiver program.  Determining who among the Plaintiffs not currently in a Waiver slot is entitled to one of the slots would pose difficult problems of proof at trial, but this is a different problem entirely than wanting for a legally

enforceable right altogether.

### b. Financial Reimbursements and the Provision of Services

Defendants claim that the reasonable promptness claims of the individual plaintiffs lack sound legal basis because the documents that control the HCB Waiver programs require the state to provide financial reimbursement only, not services.  They claim that if 42 U.S.C. § 1396a(a)(8) applies to HCB Waiver programs it only requires that the State provide prompt payment for services, not the prompt provision of services by private providers.  They rely on *Mandy R. v. Owens*, 464 F.3d 1139, 1143-46 (10th Cir. 2006), *Westside Mothers v. Olszewski*, 454 F.3d 532,  540-41 (6th Cir. 2006), and *Bruggeman v. Blagojevich*, 324 F.3d 906, 910 (7th Cir. 2003).  Plaintiffs counter that this is a strained reading of the statute and conflicts not only with the language in the statute, but also with the holdings of cases interpreting the statute.[23]   Plaintiffs rely primarily on two district court cases, *Sobky v. Smoley*, 855 F. Supp. 1146 (E.D. Cal. 1994), and *McMillan v. McCrimson*, 807 F. Supp. 475

---

[23]Plaintiffs also argue that Defendants' interpretation of the statute renders §  1396a(a)(8), as well as the regulations that require reasonable promptness, superfluous, because other statutes and regulations set forth specific time limits for payment of providers.  Plaintiffs do not point to the other statutes and regulations, and the Court is not convinced by this argument.  As detailed below, Defendants' interpretation actually makes the most sense in light of the language, nature, and purposes of the Medicaid Act, and meshes most consistently with the implementing regulations.  *See Westside Mothers*, 454 F.3d at 540-41 ("The regulations that implement these provisions also indicate that what is required is a prompt determination of eligibility and a prompt payment to eligible individuals to enable them to obtain the necessary medical services.") (citing 42 C.F.R. §§ 435.911, 435.930).

(C.D. Ill. 1992).[24]

### i. Legal Framework

The United States Code provision that contains the reasonable promptness requirement, 42 U.S.C. § 1396a(a)(8), provides specifically that "all individuals wishing to make application for *medical assistance* under the plan shall have opportunity to do so, and that *such assistance shall be furnished with reasonable promptness*."  (emphasis added). Therefore, the scope of any claim for the provision of services with reasonable promptness is set by the definition of "medical assistance," as that is all states are required to provide with reasonable promptness under the statute.  The Tenth Circuit in *Mandy R.* explained the meaning of "medical assistance" as used in § 1396a(a)(8):

> The Medicaid Act defines "medical assistance" as "payment of part or all of the cost of the [described] care and services." 42 U.S.C. § 1396d(a). The statutory definition mentions payment for, but not provision, of services. In other words, "the statutory reference to 'assistance' appears to have reference to financial assistance rather than to actual medical services." *Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906, 910 (7th Cir. 2003); *see also Westside Mothers v. Olszewski*, 454 F.3d 532, 540 (6th Cir. 2006) (concluding that 42 U.S.C. §§ 1396a(a)(8) and (10) do not "require the State to provide medical services directly" but rather require only financial assistance).  On its face, then, the Medicaid Act requires any state participating in Medicaid to pay promptly and evenhandedly for medical services when the state is presented with the bill.

464 F.3d at 1143.  However, a footnote to this excerpted paragraph notes that, without addressing the issue, two other circuits, including the Eleventh, appear to have treated the

---

[24]These cases are not persuasive, and, in light of the reasoning of the following cases and the clarity of the Medicaid Act, the Court finds that they do not merit further discussion.

statute as requiring the provision of actual services. *Id.* n.2 (citing *Doe v Chiles*, 136 F.3d 709, 714, 717 (11th Cir. 1998)); *see also Sabree v. Richman*, 367 F.3d 180, 181 n.1 (3d Cir. 2004) ("There appears to be a disagreement among our sister courts of appeals as to whether, pursuant to Medicaid, a state must merely provide financial assistance to obtain covered services, or provide the services themselves.")(citing *Chiles,* 36 F.3d at 709-714).

In *Westside Mothers*, the Sixth Circuit also addressed the meaning of "medical assistance" for purposes of § 1396a(a)(8). 454 F.3d at 540. Plaintiffs in that case argued that §§ 1396a(a)(8) and 1396a(a)(10) mandated the actual provision of, or arrangement for, certain medical services.[25] After noting the Eleventh Circuit overlooked the issue in *Doe v. Chiles*, and after examining the text and structure of the statute, the Sixth Circuit held that, because "the Medicaid Act explicitly defines the term "medical assistance," as used in § 1396a(a)(8), "'[m]edical assistance' means 'payment of part or all of the cost of the [enumerated] services' to eligible individuals." *Westside Mothers*, 454 F.3d at 540 (citing 42 U.S.C. § 1396d(a)); *see also Schott v. Olszewski*, 401 F.3d 682, 686 (6th Cir. 2005) ("The Act defines 'medical assistance' as 'payment of part or all of the cost of the [covered] care and services . . . for individuals.'"). Likewise, the Seventh Circuit in *Bruggeman* noted in dicta: "the statutory reference to "assistance" [in § 1396a(a)(8)] appears to have reference to financial assistance rather than to actual medical services, though the distinction was

---

[25]The Sixth Circuit framed the issue this way: "Thus, the issue presented by this claim is whether the individual rights to 'medical assistance' created by these provisions impose an obligation on the State to provide services directly." 454 F.3d at 539-40.

missed in *Bryson v. Shumway*, 308 F.3d 79, 81, 88-89 (1st Cir. 2002), and *Doe v. Chiles*, 136 F.3d 709, 714, 717 (11th Cir.1998).  Medicaid is a payment scheme, not a scheme for state-provided medical assistance, as through state-owned hospitals."[26]  324 F.3d at 910.

As detailed in these cases, the Eleventh Circuit has never specifically spoken to the definition of "medical assistance." But, in *Doe v. Chiles*, the Circuit, without deciding as much, treated § 1396a(a)(8) as requiring the actual provision of services. *See Doe*, 136 F.3d at 714, 717.  In *Doe*, the Eleventh Circuit affirmed the determination of the trial court that "the Florida Department of Health and Rehabilitative Services w[as] failing to furnish Medicaid assistance with 'reasonable promptness' to eligible individuals." *Id.* at 711.  The plaintiffs in that case complained that they were illegally placed on waiting lists for entry into intermediate care facilities and claimed that the defendants were causing unreasonable delays regarding the provision of intermediate care facility services in violation of the reasonable promptness requirement of § 1396a(a)(8).  The Eleventh Circuit noted the holding of the District Court that "'Medical assistance under the plan' has been defined as medical services. The state is obliged to furnish medical services only to the extent that such placements are

---

[26]The Seventh Circuit also noted that

The regulations that implement [§ 1396a(a)(8)] indicate that what is required is a prompt determination of eligibility and prompt provision of funds to eligible individuals to enable them to obtain the covered medical services that they need . . . ; a requirement of prompt *treatment* would amount to a direct regulation of medical services.

343F.3d at 910.

offered in the Federal Health Care Financing Agency ("HCFA") approved State plan." *Id.* at

711. The defendants in *Doe* conceded that Florida's HCFA State approved plan did provide

for placement in ICF/MR facilities.[27]  After noting, as this Court has, that once a state elects

to provide a service that service becomes part of the State Medicaid plan and is subject to the

requirements of Federal law, the Court construed the defendants' admission that they failed

to conform with the provisions set forth in that statute as an admission of unreasonable delay

in placing developmentally disabled persons into ICF/MR facilities. *Id.* at 712. This holding

appears to rest on the logic that, because Florida elected in its HCFA approved state plan to

provide services rather than provide mere payment for services, the state was bound by §

1396a(a)(8) to provide those services with reasonable promptness.  The Circuit did not

consider whether, absent such a term in the HCFA approved state plan, the term "medical

assistance" in §  1396a(a)(8) meant the provision of services or the provision of payment for

services.

This Court is certain that if the Eleventh Circuit were to consider (as it surely will) the

meaning of "medical assistance" in the context of this case, that it would hold that "medical

assistance" means payment for Waiver services, not the actual provision of Waiver services.[28]

_____

[27]Federal law did not require Florida to provide ICF/MR services in order to participate in
the Medicaid Program. *Doe*, 136 F.3d at 714 (citing 42 U.S.C. §§ 1396a(a)(10), 1396a(a)(31)).

[28]This Court, like our Circuit Court in *Doe v. Chiles*, see 136 F.3d at 711, was less precise
than it could have been with its use of the words "Waiver services" or "services" in its prior
order granting in part and denying in part class certification. *See Susan J.*, 254 F.R.D. at 451-
57.  Neither this Court when ruling on class certification nor the Eleventh Circuit when deciding
*Doe* considered the distinction detailed in the preceding paragraphs.  What this Court meant by

As the Sixth, Seventh, and Tenth Circuits have pointed out, the statute is clear: "The Medicaid Act defines 'medical assistance' as 'payment of part or all of the cost of the [described] care and services.'" *Mandy R.*, 464 F.3d at 1143 (quoting 42 U.S.C. § 1396d(a)); *Westside Mothers*, 454 F.3d at 540-41; *Bruggeman*, 324 F.3d at 910.   This definition comports with the nature of Medicaid itself—Medicaid is a payment scheme, not a scheme for state-provided medical assistance. *Bruggeman*, 324 F.3d at 910.   Additionally, the Eleventh Circuit's reasoning in *Doe* that Florida's election, embodied in its HCFA approved State plan, to actually provide ICF/MR services bound it to provide those services with reasonable promptness is inapposite here.   According to the uncontroverted facts, the HCB Waiver documents in this case require the State to compensate eligible persons for all services to which they are entitled.   Therefore, in light of the clarity of the language of the Medicaid Act and the unanimity of the Courts of Appeal that have considered the issue, it is the holding of this Court that, for purposes of § 1396a(a)(8), the term medical assistance means the payment for services, not the actual provision of such services, at least where the governing state plan documents do not require the state to provide the services themselves. Consequently, Defendants' Motion is due to be granted to the extent it seeks dismissal of

Waiver services was the "medical assistance" provided for in the provisions of the Medicaid Act governing Waiver programs.   As is apparent both from the plan language of 42 U.S.C. § 1396d(a), which defines "medical assistance" as financial reimbursement, and the unanimity of the Courts of Appeal that have actually considered the issue, state HCB Waiver plans need only provide medical assistance in the form of financial reimbursement for services covered under the Waiver (i.e. "Waiver services") with reasonable promptness.   State HCB Waiver plans are not required to actually provide Waiver services with reasonable promptness; a State must only provide medical assistance, i.e. financial reimbursement, with reasonable promptness.

individual plaintiffs' claims for the provision of services with reasonable promptness, rather than payment for services with reasonable promptness.[29]  Plaintiffs' Motion, which seeks an injunction ordering Defendants to provide them with Waiver services is therefore due to be denied.

**ii. Discussion**

Having prevailed on the foregoing issue of law, Defendants argue that there is no evidence that the State has failed to provide all Plaintiffs reimbursement for services with reasonable promptness.  In response, Plaintiffs persist in their argument that § 1396a(a)(8) requires the provision of services with reasonable promptness.  Consequently, throughout their briefs on the pending dispositive motions, Plaintiffs seek only the provision of services with reasonable promptness.  Indeed, the language of the Third Amended Complaint casts individual plaintiffs' claims as ones for the provision of services. For example, in its opening, the complaint states that "Plaintiffs seek appropriate residential services, residential placement, day habilitation programs, and/or other therapeutic and habilitative services . . . ." (Doc. # 107 ¶ 1.)  In fact, the relevant portions of the third amended complaint are all cast in terms of the provision of services. (E.g. Doc. # 107 ¶¶  1, 109, 120, 123, 127.)

The linchpin of Count I, which is the reasonable promptness count, is an affirmative allegation that "Medical Assistance benefits include, at the option of the state, ICF/MR

_____

[29]Defendants also argue that, to the extent Plaintiffs seek to compel delivery of additional Waiver services, they have failed to join indispensable parties.  Because the Court finds that there is no right of action against Defendants for the provision of services, this portion of Defendants' motion is due to be denied as moot.

services and/or waiver services." (Doc. 3 107 ¶ 127.)  However, as previously detailed, "[t]he Medicaid Act defines 'medical assistance' as 'payment of part or all of the cost of the [described] care and services.'" *Mandy R.*, 464 F.3d at 1143 (quoting 42 U.S.C. § 1396d(a)); *Westside Mothers*, 454 F.3d at 540-41; *Bruggeman*, 324 F.3d at 910.  The Count builds on this erroneous statement of law with allegations like: "[a]s a condition of its participation in the [waiver] program, [the State] must ensure that services which are necessary for eligible persons with mental retardation and other developmental disabilities are provided to them in a reasonably prompt manner," (Doc. # 107 ¶ 128), and "defendants must not only allow individual plaintiffs to apply for residential placement, day habilitation services, and other related supports and services, but must furnish these services promptly and without any delay caused by the agency's administrative procedures." (Doc. # 107 ¶ 129.)[30]  As should be clear from this juxtaposition of allegations and governing law,  Plaintiffs' claim in Count I and the evidence developed to support it seek to remedy purported violations of rights not created

---

[30]The evidence offered in support of these allegations is also focused on Defendants' failure to provide services. For example, Plaintiffs introduce the section of their brief that details the circumstances of the named Plaintiffs by stating: "defendants have failed to provide individual plaintiffs with services in residential placements and/or day habilitation programs." (Doc. # 187 13.)  As specific examples of this problem, Plaintiffs point to individuals who "seek[] transportation and respite services" (Susan J.), have "submitted application[s] for day habilitation and residential services" (Krystal W.), are "not receiving needed waiver services" (Brichette W.), seek "other waiver services, including, but not limited to, respite services" (Shavon H.), and who are "not receiving said requested services" (Tara L.). (Doc. # 187 14-17.) Just as the averments in the complaint do not allege problems with the prompt payment for waiver services to eligible persons, as required by the Medicaid Act, the facts offered to support Plaintiffs' grievances evince no problem with the prompt provision of reimbursement for Waiver services to eligible persons.

by the reasonable promptness provisions of the Medicaid Act.

With these allegations as the basis of their claim, it is no surprise that plaintiffs did not adduce evidence that the State failed to provide the payment for services with reasonable promptness. At least where the governing plan documents are not to the contrary, the Medicaid Act requires states to provide reasonably prompt payment for covered services to all persons who are either in a Waiver slot or are entitled to one of the legally limited number of Waiver slots available. Plaintiffs developed this particular claim on the theory that the Medicaid Act required states to provide services with reasonable promptness to everyone who has been determined to meet the preliminary eligibility requirements. Therefore, Plaintiffs' averments and evidence adduced in support of this claim are mismatched to what the Act requires the State to provide with reasonable promptness. Plaintiffs are unable to designate specific facts showing that there is a genuine issue for trial. They have provided no evidence that Defendants have failed to provide reasonably prompt payment for covered services to eligible persons as defined in this Memorandum Opinion and Order. Therefore, Defendants' Motion is due to be granted to the extent it seeks dismissal of Plaintiffs' claims for the reasonably prompt payment for services.[31]

### c. Plaintiffs' Private Right of Action to Enforce the Reasonable Promptness Requirement of 42 U.S.C. § 1396a(a)(8)

---

[31]Defendants also argue that to the extent Plaintiffs seek to compel the provision of Waiver services, they have failed to join indispensable parties, specifically the various 310 Boards. Because there is no cause of action for the provision of services with reasonable promptness, this argument is moot, and Defendants' Motion is due to be denied with respect to Plaintiffs' failure to join indispensable parties.

46

Defendants claim that Plaintiffs lack a private right of action to enforce the terms of the HCB Waiver documents.  This final challenge to the substance of Plaintiffs' reasonable promptness claim merits little discussion because this Court has decided the determinative issues of law before.

Previously, this Court was required to decide this issue because Defendants raised it in opposition to Plaintiffs' Motion for Class Certification, claiming that named plaintiffs lacked standing to sue under § 1983 because 42 U.S.C. § 1396a(a)(8) did not create legally enforceable rights.  This Court first noted that

> the Medicaid Act requires states provide some services and permits them to provide other services. The latter group is referred to as "optional services." The HCB Waiver programs are optional services. While it is true that the Waiver program is governed by an agreement between the state and the federal government, when a state elects to provide an optional service, that service becomes part of the state Medicaid plan and is subject to the requirements of federal law.

*Susan J.*, 254 F.R.D. at 451 (citing *Chiles*, 136 F.3d at 714; *Boulet*, 107 F. Supp. 2d at 76) (internal quotation marks omitted).  Hence, because the HCB Waiver documents are part of the state's Medicaid plan, the execution of the HCB Waiver program is subject to the requirements imposed on states by the Medicaid Act.  For present purposes, the significance of this is that "Medicaid assistance must be furnished with reasonable promptness to all eligible individuals," and that the statute that creates this requirement, 42 U.S.C. §

47

1396a(a)(8), creates privately enforceable federal statutory rights.[32]  Therefore, Defendants'

Motion is due to be denied to the extent it argues  42 U.S.C. § 1396a(a)(8) does not create

privately enforceable rights.

### E. Remaining Class Claims

### 1. Subclass Two

Subclass Two contains all persons with mental retardation who have applied for

services compensable under Alabama's Home and Community Based Waiver Programs but

who have been adjudged ineligible and/or denied services without notice and opportunity for

a hearing.  The origin of the rights members of this subclass seek to vindicate is 42 U.S.C.

§ 1396a(a)(3), which requires states to "provide for granting an opportunity for a fair hearing

before the State agency to any individual whose claim for medical assistance under the plan

is denied . . . ."[33]  As this Court has previously held:

> State agencies must provide individuals with an opportunity for a hearing
> before the agency when a claim for medical assistance is denied or is not acted
> upon with reasonable promptness. 42 U.S.C. § 1396a(a)(3); 42 C.F.R. §§
> 431.206, 431.210; *Cramer v. Chiles*, 33 F. Supp. 2d 1342, 1351-52
> (S.D.Fla.1999); *Bryson v. Shumway*, 177 F. Supp. 2d 78, 81 (D.N.H.2001).
> Additionally, State administration of Medicaid programs must meet the
> constitutional due process minimums set out in *Goldberg v. Kelly*, 397 U.S.
> 254, 267-71, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).
>     The implementing regulations specify the content of the notice and the

---

[32]The Court incorporates the full analysis of this issue from its previous decision by reference, and anyone needing a full elucidation on the Court's position on the matter should reference the prior Memorandum Opinion and Order. *See Susan J.*, 254 F.R.D. at 451-55.

[33]Plaintiffs also argue that these procedural rights are protected by the due process clause of the Fourteenth Amendment.

requirements for a fair hearing. The notice must inform the beneficiary of the action the agency intends to take and the reason for the action, of the facts and law that support the action, and of the right to a fair hearing. 42 C.F.R. § 431.210; *see also id.* § 431.206(b) (requiring agencies to inform every applicant or recipient in writing of the right to a hearing and the method by which one may obtain a hearing any time an individual applies for Medicaid or when an agency takes action affecting benefits).

These procedural protections are applicable to State's Medicaid Plans, which includes the HCB Waiver program. *See Chiles*, 136 F.3d at 714 ("when a state elects to provide an optional service, that service becomes part of the state Medicaid plan and is subject to the requirements of federal law."); *Parry v. Crawford*, 990 F. Supp. 1250, 1258-59 (D. Nev.1998); *King v. Fallon*, 801 F.Supp. 925, 937-38 (D.R.I.1992).

254 F.R.D. at 456-57 (internal footnotes omitted).[34]

Defendants argue that because participation in HCB Waiver programs is limited, needs-based, fact-intensive, and judgment-laden, no applicant has an absolute entitlement to participation in the program, and so no process is due to Plaintiffs.[35] They compare HCB Waiver services to government cheese, arguing that because there is no statutory entitlement

---

[34] In so holding, the Court thought it necessary to make explicit its awareness that federal regulations do not of their own force create rights enforceable through § 1983 in this Circuit. *Susan J.*, 254 F.R.D. at 457 n.17; *see also Harris v. James*, 127 F.3d 993, 1008-09 (11th Cir. 1997); *Kissimmee River Valley Sportsman Ass'n v. City of Lakeland*, 250 F.3d 1324, 1326-27 (11th Cir. 2001). As detailed more fully in the prior Memorandum Opinion and Order, the Court determined that these regulations merely "further define[] or fleshe[] out the content of [a] right," such that § 1396a(a)(3) "in conjunction with the regulation" created a federal right as further defined by the regulation" 254 F.R.D. at 457 n.17 (quoting *Harris*, 127 F.3d at 1009). This is consistent with prior holdings of the Eleventh Circuit. *Cf. Doe*, 136 F.3d at 717 (holding that § 1396a(a)(8) further defines the contours of a statutory right to reasonably prompt provision of assistance).

[35] The arguments are not in name directed to the claims of Subclass Two because this Court had not certified the subclasses prior to the submission of the Motion now under consideration. Nevertheless, the arguments are directed at claims brought pursuant to § 1396a(a)(3), which are now the claims of Subclass Two.

to government cheese, there is no right to apply for it, nor is there any problem with being required to wait in line.   This argument is wholly without merit and unduly callous. Defendants' attempt to analogize the needs of Alabama's disabled citizens to handouts of "government cheese" offends the Court's sense of justice and fair play.

The unarticulated basis for this argument seems to be the holding of *Board of Regents v. Roth* that  a person claiming a property interest in a federal benefit "must have more than an abstract need or desire for it . . . . He must . . . have a legitimate claim of entitlement to it."  408 U.S. 564, 569-70 (1972).  While the Court is not altogether convinced that there is no constitutional property interest at stake here,[36] Defendants' arguments ignore the most obvious source of the right: § 1396a(a)(3).  That statute plainly requires states to "provide for granting an opportunity for a fair hearing before the State agency to *any individual* whose claim for  medical  assistance  under  the  plan  is  denied  . . . ."  42  U.S.C.  §  1396a(a)(3) (emphasis added).  What the statute does not say is that the "any individual whose claim for medical assistance under the plan" has been denied must also have a property interest in that assistance in order to get a fair hearing.  Therefore, Defendants' Motion is due to be denied to the extent it seeks dismissal of the claims of Subclass Two.

----

[36]In its prior decision, this Court stated: "State administration of Medicaid programs must meet the constitutional due process minimums set out in *Goldberg v. Kelly*, 397 U.S. 254 (1973)." *Susan J.*, 254 F.R.D. at 456-57.  Because the statutory right is so clear, the Court will proceed without deciding whether Plaintiffs have a constitutional property interest in HCB Waiver benefits.  As the Court has pointed out before, 42 C.F.R. § 431.205(d) requires that a State's Medicaid hearing system "must meet the due process standards set forth in *Goldberg v. Kelly*, 397 U.S. 254 (1970), and any additional standards set forth in this subpart."  *Susan J.*, 254 F.R.D. at 456-57, n.18.

**2. Subclass Three**

Subclass Three contains all persons with mental retardation who have applied for services compensable under Alabama's Home and Community Based Waiver Programs and have not received a reasonably prompt claims determination.  The origin of the rights members of this subclass seek to vindicate is 42 U.S.C. § 1396a(a)(8) and its implementing regulations.  As this Court has said once before, "'the standard for informing applicants of their eligibility for Medicaid services is 'reasonable promptness.'" *Susan J.*, 254 F.R.D. at 452 (quoting *Doe v. Kidd*, 501 F.3d 348, 356 (4th Cir. 2007)).  42 C.F.R. § 435.911 provides that a state agency "must establish time standards for determining eligibility and inform the applicant of what they are.  These standards must not exceed . . . [n]inety days for applicants who apply for Medicaid on the basis of disability." *See also Susan J.*, 254 F.R.D. at 452.  As this Court previously held, "[i]t is plain that all persons who apply for HCB Waiver services enjoy the [procedural] protection of § 1396a(a)(8).  Applicants are entitled to have their claims determined with reasonable promptness." *Id.* at 455.  Defendants have presented no arguments that undermine the claims of the members of Subclass Three.  Therefore, to the extent Defendants Motion seeks to have the claims of Subclass Three dismissed, their Motion is due to be denied.

**VII. Conclusion**

For the reasons set forth above, it is hereby

ORDERED as follows:

(1) Defendants' Motions (Doc. ## 127, 152, 172) for Summary Judgment are DENIED to the extent they argue Plaintiffs lack standing;

(2) Defendants' Motion for Summary Judgment (Doc. # 172) is GRANTED to the extent it seeks dismissal of all claims against the Alabama Department of Mental Health and Mental Retardation and all of Plaintiffs' claims against that defendant are DISMISSED;

(3) Defendants' Motion for Summary Judgment (Doc. # 172) is GRANTED to the extent it seeks to prevent this Court from compelling state officials to comply with state law;

(4) Defendants' Motion for Summary Judgment as to All Claims Brought by Paul B. (Doc. # 127) is DENIED;

(5) Defendants' Motion for Summary Judgment as to All Claims Brought by Susan J., Angie D., Elizabeth A., Charles P., and Nicholas A. (Doc. # 152) is GRANTED to the extent it seeks to have the claims of Elizabeth A. and Charles P. dismissed and all claims brought by Elizabeth A. and Charles P. are DISMISSED;

(6) Defendants' Motion for Summary Judgment as to All Claims Brought by Susan J., Angie D., Elizabeth A., Charles P., and Nicholas A. (Doc. # 152) is DENIED to the extent it seeks dismissal of the claims of Angie D. and Susan J.;

(7) Defendants' Motion for Summary Judgment as to All Claims Brought by Susan J., Angie D., Elizabeth A., Charles P., and Nicholas A. (Doc. # 152) is DENIED as moot to the extent it seeks to have the claims of Nicholas A. dismissed;

(8) Defendants' Motion for Summary Judgment (Doc. # 172) is DENIED to the extent

it seeks to have the claims of Tara L., Beverly W., Krystal W., Brishette W. and Rico C. dismissed;

(9) Defendants' Motion for Summary Judgment (Doc. # 172) is GRANTED to the extent it seeks to have the claims of Shavon H. dismissed and all claims brought by Shavon H. are DISMISSED;

(10) Defendants' Motion for Summary Judgment (Doc. # 172) is GRANTED to the extent it seeks to have Count II dismissed;

(11) Defendants' Motion for Summary Judgment  (Doc. # 172) is GRANTED to the extent it seeks to have Count IV dismissed;

(12)Defendants' Motion for Summary Judgment  (Doc. # 172) is GRANTED to the extent it seeks dismissal of Plaintiffs' claims that seek placement in an ICF/MR institution;

(13) Defendants' Motions (Doc. ## 127, 152, 172) are GRANTED to the extent they seek dismissal of all or part of the claims of Plaintiffs who (1) seek services not provided for in the documents that govern the terms of the HCB Waiver programs, and/or (2) cannot prove that they are one of the eligible recipients;

(14) Defendants' Motion for Summary Judgment  (Doc. # 172) is GRANTED to the extent it seeks dismissal of claims of Plaintiffs that seek alterations to the administration of the waiting list and to the extent Plaintiffs claim an entitlement to the provision of medical assistance with reasonable promptness but are not either in a Waiver slot or entitled to one;

(15) Defendants' Motion for Summary Judgment  (Doc. # 172) is GRANTED to the extent it seeks dismissal of Plaintiffs' claims for the provision of services with reasonable

promptness, rather than payment for services with reasonable promptness;

(16) Defendants' Motion for Summary Judgment (Doc. # 172) is GRANTED to the extent it seeks dismissal of Plaintiffs' claims for the reasonably prompt payment for services;

(17) Plaintiffs' Motion for Partial Summary Judgment on "Reasonable promptness" Claim (Doc. # 211) is DENIED;

(18)  Defendants' Motion for Summary Judgment (Doc. # 172) is DENIED as moot to the extent it seeks dismissal of Plaintiffs' claims for failure to join indispensable parties;

(19) Defendants' Motion for Summary Judgment (Doc. # 172) is DENIED to the extent it argues  42 U.S.C. § 1396a(a)(8) does not create privately enforceable rights;

(20) Defendants' Motion for Summary Judgment (Doc # 172) is DENIED to the extent it seeks dismissal of the claims of Subclass Two; and

(21) Defendants' Motion for Summary Judgment (Doc. # 172) is DENIED to the extent it seeks dismissal of the claims of Subclass Three.

After all of this, the only claims that remain are those of Subclasses Two and Three. Therefore, it is further

ORDERED that Plaintiffs shall file, within **14 days** of the date of this Memorandum Opinion and Order, a list, with facts and citations to legal authority as necessary, of the remaining named Plaintiffs who represent Subclass Two and a list, again with facts from the record and citations to legal authority as necessary, of the remaining named Plaintiffs who represent Subclass Three.   Defendants shall file their response, if any, within **7 days** of Plaintiffs' initial filing.   The claims of all Plaintiffs not specifically dismissed by this

Memorandum Opinion and Order who are not subclass representatives will thereafter be

dismissed by order of this Court.

      Done this 29th day of April, 2009.

                                    /s/ Mark E. Fuller
                         CHIEF UNITED STATES DISTRICT JUDGE